UNITED STATES *v*. ALEX. MURPHY & Co. (No. 3028)[1]

[1] T. D. 43210.

United States Court of Customs Appeals, January 9, 1929

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument December 4, 1928, by Mr. Lawrence and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, and BARBER (retired), Associate Judges

BARBER, Judge (retired), delivered the opinion of the court:

This case was first heard here on the 8th day of February, 1928. *Sua sponte*, we ordered a reargument which was had at this December session of the court.

The merchandise involved in this appeal is known as Yavan glue. In his report to the Customs Court the collector described it as a "Mixture containing 25.9 per centum ethyl alcohol, resin distillate, etc.," and attached thereto the special report of the appraiser (the answer to the protest). Therein that officer described it as "a mixture containing 25.9 per centum of ethyl alcohol, resin petroleum distillate, and nitrogenous matter, probably glue or albumen." The collector classified and assessed the importation under paragraph 24 of the Tariff Act of 1922 at 40 cents per pound and 25 per centum ad valorem.

The importer in its protest claimed it should have been classified under paragraph 28 and assessed at the appropriate compound specific ad valorem rate on the basis of the American selling price of bakelite, claimed to be a competitive article manufactured or produced in the United States, or on the basis of the United States value of the Yavan glue in question.

Paragraph 24 is as follows:

Chemical elements, and chemical and medicinal compounds, preparations, mixtures, and salts, distilled or essential oils, expressed or extracted oils, animal oils and greases, ethers and esters, flavoring and other extracts, and natural or synthetic fruit flavors, fruit esters, oils and essences, all the foregoing and their combinations when containing alcohol, and all articles consisting of vegetable or

mineral objects immersed or placed in, or saturated with, alcohol, except perfumery and spirit varnishes, and all alcoholic compounds not specially provided for, if containing 20 per centum of alcohol or less, 20 cents per pound and 25 per centum ad valorem; containing more than 20 per centum and not more than 50 per centum of alcohol, 40 cents per pound and 25 per centum ad valorem; containing more than 50 per centum of alcohol, 80 cents per pound and 25 per centum ad valorem.

Paragraph 28 is long, and we quote only that part particularly involved in this case. It is introduced by the expression "Coal-tar products." Then follow, generally speaking, provisions for colors, dyes, or stains, color acids, etc.; ink powders; photographic chemicals; numerous articles suitable for medicinal use; certain and other synthetic odoriferous or aromatic chemicals, cosmetics, or toilet preparations not mixed and not compounded "and not containing alcohol." It then provides for—

synthetic phenolic resin and all resinlike products prepared from phenol, cresol, * * * or from any other article or material provided for in paragraph 27 or 1549, all of these products whether in a solid, semisolid, or liquid condition; * * * and all mixtures, including solutions, consisting in whole or in part of any of the articles or materials provided for in this paragraph, excepting mixtures of synthetic odoriferous or aromatic chemicals, 45 per centum ad valorem based upon the American selling price * * * of any similar competitive article manufactured or produced in the United States, and 7 cents per pound; * * *. If there is no similar competitive article manufactured or produced in the United States then the ad valorem rate shall be based upon the United States value, as defined in subdivision (d) of section 402, Title IV. * * *

The paragraph contains this proviso:

That any article or product which is within the terms of paragraph 1, 5, 38, 40, 61, 68, 84, or 1585, as well as within the terms of paragraph 27, 28, or 1549, shall be assessed for duty or exempted from duty, as the case may be, under paragraph 27, 28, or 1549.

When the case came on for hearing before the Customs Court, two chemists were called as witnesses, one testifying for the importer, the other for the Government. No other witnesses testified except an assistant appraiser, the purport of whose testimony was that the sample examined by the Government's chemist came from the importation.

We quote from the opinion of the Customs Court, by Brown, Justice:

After careful consideration of the testimony in the record we find as a fact herein that the merchandise in question consists in large part of the products enumerated in said paragraph 28. This is rested in part on the very full and complete testimony of the able chemist who testified for the importers and who showed in detail his analytical methods for identifying the portion of this substance which he found contained resinlike products prepared from phenol, etc., and in part upon the admission of the Government chemist that it contained some coal-tar products and in part upon its likeness in use to bakelite varnish.

The testimony as to likeness in use to bakelite varnish was admissible on protest to review the action of the collector in deciding under what paragraph it

should be classified. It was not admissible, as seems to be claimed by the importers, to show whether it was comparable for applying the American selling price within the meaning of paragraph 28 with bakelite varnish. With the latter the collector has nothing to do, it being made a part of the appraisement process under paragraph 28. Note concurring opinion in W. W. Hearne's case, published in full in Abstract 3478.

That the merchandise in question falls likewise within the language of paragraph 24 as a chemical mixture containing alcohol is undoubtedly true, but the expression "synthetic phenolic resin and all resinlike products prepared from phenol * * * all of these products whether in solid, semisolid, or liquid condition * * *," as provided for in paragraph 28, is clearly more specific than the general expression covering the alcoholic compounds in paragraph 24.

The Government further claims that the proviso in said paragraph 28, which reads as follows—

*Provided further,* That any article or product which is within the terms of paragraph 1, 5, 38, 40, 61, 68, 84, or 1585, as well as within the terms of paragraph 27, 28, or 1549, shall be assessed for duty or exempted from duty, as the case may be, under paragraph 27, 28, or 1549—

presumptively limits articles classified thereunder to those which are also covered by the paragraphs mentioned in the proviso. With that we can not agree. The Government also contends that because bakelite and Yavan are not similar competitive articles, therefore Yavan does not go into paragraph 28. Assuming that were true, it would not affect the classification under paragraph 28, but would only affect the application of the bakelite value as the American selling price in appraisement under said paragraph 28.

The Government challenges the correctness of the finding of the court that the merchandise consists in "large part" of the products enumerated in paragraph 28, claiming that the implication is that it is chiefly so composed, but does not deny that it consists in some part thereof. Inasmuch, however, as paragraph 28 covers all mixtures, including solutions consisting in whole or *in part* of any of the articles or materials provided for in this paragraph, it makes no difference whether the finding of the Customs Court that this glue was composed in large part of the materials provided in the paragraph is or is not strictly correct. If it is composed in some substantial part thereof, which the Government does not deny, it is sufficient, so far as that characteristic is concerned, to bring it within the paragraph.

The Government contends that because paragraph 24 is not included among the paragraphs specifically mentioned in the above-quoted proviso of paragraph 28 it should be held that Congress did not intend that merchandise otherwise within paragraph 24 should be, nevertheless, classifiable under paragraph 28. We are unable to agree with this contention. The obvious purpose of inserting in the proviso the various paragraphs mentioned was to accomplish just what the proviso declares, namely, that in cases where the merchandise is within the mentioned paragraphs, as well as within paragraph 27, 28, or 1549, the provisions of the three last-mentioned paragraphs shall govern, but as to any other paragraph not named

the terms of which may include merchandise also within said three paragraphs the more specific provision shall control.

We agree with the Customs Court that the testimony clearly establishes that the importation is a mixture composed *in part* of the materials provided for in paragraph 28, in that it contains a resinlike product prepared from phenol or cresol, both of which are coal-tar products named therein, and we hold, as did the court below, that the provision for "synthetic phenolic resin and all resinlike products prepared from phenol * * * all of these products whether in a solid, semisolid, or liquid condition," in paragraph 28, more specifically describes the merchandise here than the provision for certain articles "when containing alcohol" or "all alcoholic compounds not specially provided for," in paragraph 24. In this case we understand the Government relies on the last-quoted provision in paragraph 24.

Further than this the provision in paragraph 28 for "all mixtures, including solutions, consisting in whole or in part of any of the articles or materials provided for in this paragraph," with certain exceptions which do not include the merchandise here, also more specifically describes this glue than does any provision of paragraph 24. Both of the chemists testified that the importation was a mixture or a solution. That it consists in part of the articles or materials provided for in paragraph 28 is, as already pointed out, established.

The material part of the judgment entry is:

* * * it is hereby ordered, adjudged, and decreed that the protest in this case claiming certain Yavan glue to be dutiable under paragraph 28, Act of 1922, at 7 cents per pound and 45 per centum of the value only appropriate to that paragraph is sustained, and the collector of customs at the port of Philadelphia will reliquidate the entry accordingly.

It is contended by the Government that this is error, because it directs the collector to assess duty on a value different from the final appraised value which is required by section 503 of the act. It concedes that the merchandise was not appraised at the American selling price of a similar competitive article or at the United States value, as paragraph 28 provides importations classifiable thereunder must be appraised.

The importer agrees that the appraisement was not made as required by that paragraph, and contends that, the merchandise having been found classifiable thereunder, it must be so appraised before a lawful liquidation can be had.

Restated, it thus appears that the importation has not been appraised as the law requires, and the collector has, therefore, liquidated the entry upon an appraisement wholly illegal and not such as both the Government and the importer are entitled to have made.

. It will be observed that this is not an appeal to reappraisement, but is a protest against the collector's classification and the resulting liquidation; hence the issue here, strictly speaking, is the classification of the merchandise. The Customs Court has held, and we affirm its judgment in that respect, that the importation is classifiable under paragraph 28.

Section 501 of the act provides that the decision of the appraiser, the single general appraiser, or the board of three, as the case may be, shall be final and conclusive upon all parties. Section 503 provides that the dutiable value of merchandise subject to an ad valorem rate shall be based upon such final appraisement, and the Government strongly urges that, notwithstanding the fact that the appraised value has not been ascertained as required by law, duty must, nevertheless, now be taken upon that illegally ascertained value.

In *United States* v. *Tampa Box Co.*, 15 Ct. Cust. Appls. 360, T. D. 42561, we had before us a case which, as respecting this issue, was similar to the one at bar. It was held, upon ample authority cited therein, that, notwithstanding the provisions of section 501 of the present act, appraisements were not in all cases final, especially that they were not so when certain mandatory provisions of the law respecting the same had not been complied with, and that in a classification case the appraisement might be impeached "where the appraiser had proceeded on a wrong principle contrary to law, or had transcended the powers conferred by statute." This doctrine has more recently been affirmed by this court. See *Carey & Skinner* v. *United States*, T. D. 43118, and *United States* v. *F. D. Vandegrift & Co. et al.*, T. D. 43120, herein decided November 30, 1928.)

We do not overlook the fact that these two last-cited cases were appeals to reappraisement, but, nevertheless, they confirm the view that a valid liquidation can not be had upon an unlawful appraisement.

In the case of *United States* v. *Tampa Box Co.*, supra, the effect of section 501 and of numerous decisions as to the law of appraisements was fully considered. It was, among other things, therein said:

The logic of the opinions in those cases and the language of section 501 require the conclusion that by this change in the law Congress intended that all questions as to the validity of appraisements should be determined in such judicial proceedings. This would make unnecessary their determination or review in the trial of protests against the collector's liquidation, which are addressed to the classification side of the Customs Court. In other words, any question properly arising as to the appraisal of importations, upon which appraisal the collector may lawfully liquidate, are to be settled by appraisement tribunals and before liquidation. This must have been the congressional intent, because Congress could hardly have contemplated in the last enactment leaving open two methods of determining questions involved in the appraisement of imported merchandise. As was aptly remarked by the dissenting justice, if this were not so—"it would

not seem to be incumbent upon any importer dissatisfied with the findings of a United States appraiser to appeal to reappraisement."

Our conclusion is that in the case at bar importer may not raise issues that properly appertain to the appraisement of these logs.

Applying the rule of the before-mentioned cases and other cases therein referred to, it is obvious that in this, a classification case, we can not order a reappraisement, and it is equally clear that it is our duty to hold that the liquidation in the case is void, because based upon an illegal and, therefore, void appraisement.

It would seem that, the appraisement made being void, the matter might be regarded as now pending before the local appraiser for an appraisement under the provisions of paragraph 28, and that the court below would be authorized to direct the collector to reliquidate the entry upon a new appraisement made as provided in paragraph 28, unless, after such appraisement has been had, it shall appear that the entered value is greater than such appraised value, in which case we are of opinion that the provision of section 489 that "Duties shall not, however, be assessed upon an amount less than the entered value," with certain exceptions not applicable here, must control.

The result is that the judgment below, that the merchandise is properly classifiable under paragraph 28, is *affirmed* and the cause *remanded* with directions that further proceedings be had not inconsistent with the views herein expressed.