UNITED STATES *v.* AMERICAN BROWN BOVERI ELECTRIC CORPORATION (No. 3226) [1]

[1] T. D. 43776.

United States Court of Customs and Patent Appeals, December 19, 1929

*Charles D. Lawrence*, Assistant Attorney General (*Peter A. Abeles*, special attorney, of counsel), for the United States.
*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellee.

[Oral argument October 17, 1929, by Mr. Lawrence and Mr. Place]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported certain merchandise at the port of New York which was classified as manufactures of metal under paragraph 399 of the Tariff Act of 1922. It was claimed to be free of duty as models under paragraph 1620, or dutiable, alternatively, under paragraph 372 or 1459 of said act. No contention is made here that the articles are dutiable under either of the alternative claims, but appellee relies upon said paragraph 1620. The other alternative claims will, therefore, not be considered.

The United States Customs Court sustained the protests under said paragraph 1620, and the Government has appealed.

The articles in question were exported by Brown Boveri & Co. (Ltd.), of Baden, Switzerland, to the American Brown Boveri Electric Corporation, of Camden, N. J. They are denominated in the invoices as "patterns of individual wheel drives." The exhibit is about 5 inches in height, 6 inches in length, and 4 inches in width, and consists of a solid brass platform on which are mounted three supports, also of brass, on which supports are suspended an axle and two brass flanged car wheels, on the outside of one of which wheels is a brass cogged wheel with an attachment by which the axle and car wheels may move in various directions without affecting the cogged or drive wheel. Attached to the supports upon which the axle is mounted are two small levers with suitable attachments by which the operation of the mechanism can be demonstrated. On the side of the axle support is a brass plate upon which appear the letters, in large, plain type, "B B C." The whole arrangement is well and substantially made and has evidently been prepared with care and considerable expense. These articles are exact reproductions in miniature of a patented device perfected by one Buchli, of the Swiss Locomotive Works, and the patent of which is owned by Brown Boveri & Co.

(Ltd.). The American Brown Boveri Corporation has imported approximately 150 of the articles in question, 40 of these being involved in the present proceedings. Mr. Reed, sales engineer and executive assistant of the importer, testified, when asked what the imported articles were:

Q. This is a miniature, is it not?—A. Oh, yes; it is simply a desk piece which we give out freely to railroad executives to play with and study and it has created a great deal of interest in the country both from railroad mechanical people and from our competitors, and provides something that we are all glad to get.

\*     \*     \*     \*     \*     \*     \*

Q. To whom did you give out the models which you imported?—A. I gave them out pretty well to most all executives of all important railroads, most all railroad presidents, and chief mechanical executives of railroads in this territory.

\*     \*     \*     \*     \*     \*

Q. These models are distributed with a view to selling the merchandise?—A. With a view to interest them, first, to show them how the device works.

Q. And ultimately with the idea of selling this device?—A. Well, we hope to. We probably distributed 150 of the models, and we certainly will not obtain business from the 150 companies that have them.

The only evidence of any other use of the articles in question is the testimony of Mr. Reed that, on one occasion, his company built a device like the one in question, of full size, using one of the imported articles as a model. As to the particular articles imported here he testified:

Q. Did you see them at the time of importation?—A. Yes; I put them in stock.

From the record it is apparent that the imported articles are made and distributed to be used not as models, but for advertising purposes alone. It makes no difference that the number of articles imported was small; identically the same legal rule would apply to these 40 articles as would to an importation of 40,000 for the same purposes.

The particular paragraph involved here is paragraph 1620 of the free list in the Tariff Act of 1922. It reads as follows:

PAR. 1620. Models of inventions and of other improvements in the arts, to be used exclusively as models and incapable of any other use.

It is argued that this language includes the articles before us. We are of opinion that, judging the matter not only by the language of the above statute but by the legislative history of the paragraph as well, it is not the congressional intent that articles such as the ones imported here should be classified under paragraph 1620. There is enough doubt and ambiguity about the statutory language that we may have recourse to the legislative history as an aid to construction. The Tariff Act of July 24, 1897, paragraph 616, provided:

616. Models of inventions and of other improvements in the arts, including patterns for machinery, but no article shall be deemed a model or pattern which can be fitted for use otherwise.

Under this statute two models of steamships of the Hamburg-American Line were imported at the port of New York, and were assessed for duty under paragraph 193 of the said act of July 24, 1897, as manufactures of metal. They were claimed to be free under the provisions of said paragraph 616. The United States Circuit Court of the Southern District of New York, in *Boas* v. *United States*, 128 Fed. 470, held that these articles were "not models of inventions" but that they were models of improvements in the arts and were therefore free under said paragraph. In another case under the same act, T. D. 25942, 9 Treas. Dec. 19, the Board of General Appraisers had before it certain wooden forms called molders' patterns, which had been assessed as manufactures of wood under paragraph 208 of the said act and were claimed to be free as patterns under said paragraph 616. The Board of General Appraisers called attention, in an extended opinion, to the fact that the manufacture of molders' patterns was a large industry in the United States and that such patterns were, in reality, tools of a trade, of short life, constantly worn out and replaced, and were not the kind of patterns intended by the statute, but that, rather, the term "patterns for machinery" referred to patterns to be used for construction in the same manner as a model might be. This judgment was reversed in *Hoe & Co.* v. *United States*, 141 Fed. 488, affirmed in 147 Fed. 201, without opinion. In the opinion filed in 141 Fed. 488, there is a discussion of the scope and extent of the meaning of the word "patterns." Townsend, Circuit Judge, in concluding the opinion, expresses doubt as to the scope of this word, but resolves such doubt in favor of the importer and holds the molders' patterns to be patterns within the meaning of the statute in question. This was the status of affairs when the Tariff Act of August 5, 1909, was prepared and enacted.

The "Notes on Tariff Revision" furnished to the committees of Congress in 1908 during the preparation of said Tariff Act of August 5, 1909, referred to the judicial constructions of the said paragraph 616 and made certain suggestions to the congressional committees in the following language:

DECISIONS AND INTERPRETATIONS.—In the case of *Boas* v. *United States*, 128 Fed. Rep. 470; T. D. 25024, February 3, 1904, two models of steamships of the Hamburg-American Line, made at the shipbuilding yards in Germany by the same company as that which constructed the steamships of which they are exact models, on a scale of 75 to 1, showing in detail the hulls, upper works, hoisting engines, propellers, twin screws, etc., and of the value of about a thousand dollars each, intended for exhibition in the steamship company's offices, were held to be free of duty under this paragraph, the judge taking the view that they were models of improvements in the arts.

COMMENTS AND SUGGESTIONS.—It would seem that an interpretation of this paragraph more in harmony with the intention of the lawmakers is that found in T. D. 22981 (April 23, 1901), wherein the Treasury Department refused to pass free of duty the miniature copy of a steamship. In that ruling the following language appears:

In reply I have to state that a model of invention or improvement in the arts, or pattern for machinery, is construed by this department to mean an object, plan, or design from which working machines, devices, or structures are to be made. It is assumed that the miniature in question is but the representation of the exterior of the vessel, intended to be used as an attractive advertisement, and that the details of construction are not exhibited by it, as would be the case with a true model. The department must, therefore, adhere to the opinion expressed in its telegram of the 15th instant, that the article in question is not entitled to free entry under said paragraph 616.

Following these suggestions the Congress adopted and incorporated in said act of August 5, 1909, paragraph 629, which was the exact language recommended in said "Notes on Tariff Revision" (p. 747) and which reads as follows:

629. Models of inventions and of other improvements in the arts, to be used exclusively as models and incapable of any other use.

It will be observed from an inspection of this paragraph that certain important changes had been made: First, "patterns for machinery" was omitted; second, such models were only to be admitted as were "to be used exclusively as models."

Plainly these changes were made to cure the defects pointed out in the *Boas* and *Hoe* cases. Models, to be models under this paragraph, must be used as such and, following the ordinary protective ideas embodied in this and similar statutes, the statute was corrected to protect the American makers of patterns used in the arts and trades.

A change in the language of a statute has always been construed by us to import a change in meaning unless the contrary is made plainly to appear in other ways. No principle is better settled in our court than this. *United States* v. *Hudnut*, 16 Ct. Cust. Appls. 463, T. D. 42546; *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022.

Paragraph 551 of the Tariff Act of October 3, 1913, continued the language of paragraph 629 of the act of August 5, 1909, and has been continued unchanged in paragraph 1620 of the Tariff Act of 1922.

The imported articles are not, in our opinion, used exclusively as models, and are not intended to be so used. They are sent gratuitously to people who have not asked for them and who may or may not want them for any purpose. The statute says they must be used "exclusively" as models. The use of an object as a model imports that it must be used for modeling something. The verb "model," as defined by Webster's New International Dictionary, 1925, is—

2. To plan on form after a pattern; to form in model; to form a model or pattern for; to shape; mold; fashion; frame; * * *

In other words, it is apparent that what the Congress intended to do was to provide for the free admission into this country of models which were to be used for the making or building of something. We do not believe it was the intention to permit a manufacturer in some

foreign country with a subsidiary American corporation to prepare any desired number of miniature reproductions of goods which it had to sell, and distribute them through the United States gratuitously and evade the payment of duty under the claim that they were models and used exclusively as such. Great abuses will necessarily follow from any such construction of the law, which seems to be framed in careful and exact language, with the idea of not permitting any such construction.

It is not the policy of this Nation, as expressed in the Tariff Act of 1922, to admit advertising matter free of duty. Reference is had to paragraph 1528 of the free list, permitting the free admission of certain scientific charts and expressly providing that if the same contain advertising matter they shall not be free of duty. In other words, if we were to agree with the contentions of appellee, printed advertising matter may be dutiable, while elaborate devices, like the one here before us, are free. We can not believe there was any such congressional intent.

It is argued that this construction is untenable because of the second limitation contained in the statute, which reads, "and incapable of any other use." It is said, in support of this view, that if the paragraph is to be limited to forms, structures, or patterns from which articles, natural in size and practical in use, are to be fashioned or constructed, practically all models would be excluded from the paragraph for the reason that they could be used in advertising and as paper weights and ornaments.

In our opinion the phrase "incapable of any other use" in the statute alludes to a substantial, practical use for some utilitarian purpose, arising from the structure of the article itself, and not some accidental, occasional, or fugitive use.

If articles claimed to be models are capable of performing the functions of the objects or structures which they were designed to represent, this phrase of the statute would apply, for in such case they would not be "incapable of any other use"; or an article might be entered as a model and yet, by reason of its structure, be capable of performing some function entirely outside of the functions which the article itself, when built, would perform. In other words, "incapable of any other use" goes to the functions that may be performed by an article which the phrase "incapable of any other use" is designed to cover, while an article that does not perform any other functions growing out of its structure must still be imported to be used exclusively as a model, which would exclude its free admission for advertising purposes, unless such use was incidental or fugitive.

Of course, a railroad executive might consider one of the imported "patterns of individual wheel drives" as an appropriate ornament for his desk, and he might use it as such. However, if it was imported "to be used exclusively as a model" in the building of a ma-

chine suitable in size and construction for practical uses, it would not be excluded from the paragraph by virtue of the language "and incapable of any other use," contained in the statute, merely because, in the opinion of one, it was a suitable ornament for a desk. This is but an incidental or fugitive use. These articles were not imported "to be used exclusively as models," but, on the contrary, were admittedly imported to be used for advertising purposes. This being so, they are not entitled to classification under paragraph 1620.

For the reasons given the judgment of the court below should be and is *reversed*.

### DISSENTING OPINION

GARRETT, Judge: It is possible to argue with plausibility that the limiting clause of paragraph 1620 of the Tariff Act of 1922, expressed in the words "to be used exclusively as models and incapable of any other use," is tautological and, therefore, somewhat ambiguous. By the law of nature the use of any article is confined to that adaptation of which it is solely capable. If, therefore, the article is "incapable of any other use" it certainly must be used exclusively as a model.

Congress possibly could have reached the end which, from the language, I think was intended by omitting the words "to be used exclusively as models" and simply saying "models * * * incapable of any use except as models." The latter phrase. "incapable of any other use" is normally the broader of the two and it seems to me would include any use contemplated in the expression "to be used exclusively as models."

However, it is assumed that the exact language was inserted out of an abundance of caution, and it is, of course, the duty of the court to interpret and make effective both phrases.

It seems to me that the natural, common-sense meaning of the paragraph is that an article which is a model of invention or of improvement in the arts can be imported duty free when (*a*) the intention is that it is to be used exclusively as a model, provided (*b*) it is incapable of any other use. The importer, in the best of faith, may intend that an article is to be used exclusively as a model, but if by the nature of its structure or for any other reason it is capable, as imported, of being used otherwise, it must be barred from free entry.

Two factors, therefore, enter into the equation: (*a*) Intention of use and (*b*) capability of use. The purpose must be exclusive use as a model, and capability of any other use must be negatived; that is, it must be determined to be incapable of any other use. This negative factor may be ascertained in some instances from a mere inspection of the model. In other instances proof of function may be required to determine capability or noncapability. In the instant

case the record, a part of which is one of the models filed as an exhibit, appears ample to determine both elements.

The majority, apparently, are of the opinion that a certain kind of advertising was intended to be derived, and has been derived, from the distribution, principally among railway executives, of the articles involved; that this so-called advertising is a use other than the model use contemplated by the statute and, therefore, this particular use must bar them from free entry under the " to be used exclusively as models " phrase of the paragraph. It would appear to follow logically that if this be held a use other than as a model, it demonstrates a capability of "other use," and hence falls under the ban contained in the second and broader phrase "incapable of any other use."

I find myself unable, however, to agree with the conclusion of the majority that the particular alleged "advertising" derived from the exhibition of these models is of such a character or nature as to violate the true meaning of the phrase "to be used exclusively as models." To my mind such "advertising" is inseparable from an inspection of the structure and is a legitimate part of the function of a model. The word "advertising" is not, indeed, happily or aptly used.

The Customs Court adopted the definition of the word "model," when used as a noun, given in the Standard Dictionary, to wit:

An object, usually in miniature, representing accurately something to be made or already existing.

An examination of other definitions develops none inconsistent with that adopted by that court, and I feel that it is the proper one for the instant case.

So, it may be inquired, What do the models at issue do? Obviously the answer is they show what the machine of which they are replicas looks like. One can look at the model and visualize the larger, practical machine. In this respect they do give publicity to or "advertise" the thing they represent, but this is not a kind of advertising which legitimately may be classified as "other use," as those words are set forth in the paragraph. This is an inherent, indisseverable element of *use as a model*. If a model be not a replica of the thing it is intended to represent to such an extent as that it shows to one inspecting it what the thing is, I should hardly regard it as a model. If it does show what the thing is then this showing surely is a model attribute.

Applying what appears to me to be their erroneous finding based upon an improper deduction as to the meaning of the word "advertising" the majority have given to paragraph 1620 an interpretation the logic of which, if strictly applied, will lead to the paragraph's emasculation.

It is true that they define the models which they think Congress intended to admit duty free, as "models which were to be used for the making or building of something," and, it is assumed, they intend it to be inferred that a model so used is classifiable under paragraph 1620. And yet, how may it be so classified and square with their fundamental finding, if in addition to this use, or while being so used, it discloses to those who may see it what it is or what it represents? That would be "advertising" under the meaning which the majority appear to give to that word and could be applied logically to both phrases if the limitation of the court should elect to do so. If it be responded that such "advertising" result is incidental to such construction use and, therefore, unavoidable and so must be disregarded, the answer would appear to be that this is equally true as to the models not used to construct by, or from, but merely for exhibition.

One at least of the models contained in the importation involved was used for constructing, in this country, a complete machine. It met the condition of being "used for the making or building of something," but it was also used, or was capable of being used, for showing what it represented, and, quite logically, it falls, along with the others, under the ban of the majority opinion.

It seems to me the majority are arbitrarily making an artificial division of a subject matter which does not admit of a natural division. They are segregating from a model a use inherent in it as a model, and making that inseparable and indisseverable element the basis for finding a nonexclusive use. I can not but feel that they have failed properly to distinguish between "advertising" and "exhibition" in the use of a model. Some models could perhaps be used for advertising purposes in a way that would clearly debar them from free entry, but it would have to be an advertising different from that publicity of which the models here involved, in their condition as imported, are capable.

I doubt whether the language is so tinctured with ambiguity as to necessitate invoking the legislative history in order to arrive at the intent of Congress. But there is no objection to so doing of which I am aware, and, strangely it seems to me, the majority have done so. The history, as I view it, does not buttress their conclusion, but indicates rather that Congress did not intend any such narrow construction of the paragraph.

By reference to this history, as set forth in the majority opinion, it will be noted that when Congress was formulating the act of 1909 there was laid before it the court constructions of paragraph 616 of the act of 1897, under which court constructions certain "Molders' Patterns" and two "steamship models" had been admitted duty free. The attention of Congress was also directed to a Treasury

ruling upon the paragraph 616 made prior to these court decisions in which that department said:

* * * a model * * * is construed by this department to mean an object, plan, or design from which working machines, devices, or structures are to be made.

This appears to me to have substantially the same meaning as the words of the majority "to be used for the making or building of something," when those words are taken in connection with the remainder of the text of their opinion. They have given to paragraph 1620 of the act of 1922 the very interpretation which the department gave to paragraph 616 of the act of 1897.

Did Congress so intend? I think not, and think the history sustains my conclusion.

The information as to the court constructions was placed before Congress in "Notes on Tariff Revision" and along with it was the suggestion that the department's ruling as quoted *supra*—

Would seem * * * more in harmony with the intention of the law makers.

With this information and suggestion before it, Congress formulated paragraph 629 of the Tariff Act of 1909 which has been since retained and is now the paragraph in issue, *and did not use the Treasury ruling language.*

Had Congress adopted the language of the Treasury ruling defining models, nothing else appearing, it would be very persuasive, perhaps practically conclusive, as to its intention. The language of the ruling is well chosen, clear, and free from ambiguity. But Congress did not do so and the fact that it did not, but instead chose other phrases that are certainly reasonably capable of (I think incapable of any other than) a broader interpretation, it seems to me, manifested a definite purpose not to restrict the importation of duty-free models to the extent contemplated by the old Treasury ruling of 1901 and now declared to be the law by the majority opinion.

It is quite true that "a change in the language of a statute has always been construed by us to import a change in meaning unless the contrary is made plainly to appear in other ways," as stated in the majority opinion. The change in language appearing in the act of 1909 indisputably had the purpose of making a change in the theretofore existing law and the practice under it, but it does not follow from this that Congress intended to make the Treasury ruling the law as the majority now propose to do. Had it so intended, I can not understand why it did not adopt the well-phrased language of that ruling. My mind does not rest content in the conclusion that any such narrow limitation was intended or provided, because the language

used by Congress does not mean what the language of the Treasury ruling means.

Changes were wrought, but what were they?

By entirely dropping the words "including patterns for machinery," as they appeared in paragraph 616 of the act of 1897, Congress met the court decisions under which "Molders' Patterns" (articles which were not models in fact but the actual frames or forms used in molding metal, which forms were coming in direct competition with similar articles manufactured in the United States) had been and were being admitted free of duty. It is possible, though I do not regard it as being here material, that the new language which Congress did adopt excluded from the free list such articles as the steamship models involved in the *Boas* case cited in the majority opinion. Those were not complete models, except as to the external features of the vessels of which they were miniature replicas, and they probably had practically none except a real advertising use, but it was entirely different advertising from that held in the majority opinion to bar the merchandise involved in this case. The steamship models advertised a steamship line in order to attract travel; the models involved here simply show what the thing is of which they are miniature replicas. Their admission under paragraph 1620 can bring no conceivable harm to any person or industry in the United States. The machine which the models represent is a patented article. If any person becomes interested enough to purchase and import a machine he will pay the duty on it fixed by law; if he acquires the right to construct a machine here it will give employment to home labor.

It is a conclusion of the majority that it was not—

The intention to permit a manufacturer in some foreign country with a subsidiary American corporation to prepare any desired number of miniature reproductions of goods which it had to sell and distribute them through the United States gratuitously (etc.).

This is, of course, using a possible matter of competition as a factor to assist in determining congressional intent, and I question whether we are called upon as a court to look to that. But in any event it does not seem to me to be applicable to the instant case.

Paragraph 1620 deals with *models of invention*, and of *improvements in the arts*, not with merchandise of trade. The *models* in issue do not compete with anything produced in the United States, and the essential part of the machine of which they are miniature replicas is an *invention*, patented, which is alleged to be an improvement upon certain existing art. Underlying the reasoning of the majority in the paragraph last quoted, there seems to me to be a confusion of the model with the machine itself.

Just how any citizen or industry can be injured by persons seeing such models with or without duty having been paid upon them, I do not quite comprehend.

In any event, it is the statute properly interpreted which controls, and it seems to me that the majority have read into it, by construction, a meaning which its language does not justify and which Congress itself, with fullest information before it, and notwithstanding Treasury suggestion, deliberately and designedly declined to place there.

The "advertising" use ascribed to the models involved is the only use found by the majority to inhibit their classification under paragraph 1620. Such other uses as are suggested by the record are by them correctly found to be trivial or fugitive. In my opinion, the so-called particular advertising use described is not an advertising use which is separable from the use of the models as models, so as to bar them under the phrase "to be used exclusively as models," nor have I been able to conceive of any adaptation of them which could be violative of the second phrase, "incapable of any other use."

I feel that the judgment of the Customs Court should be *affirmed* and, therefore, respectfully dissent.

### DISSENTING OPINION

BLAND, Judge: I concur in the dissenting opinion of Judge GARRETT and desire to emphasize certain features of the same.

I can not agree with the position taken by the majority for the reason that it gives conflicting meanings for the words "used" and "use" as found in the same paragraph. In other words, the conclusion of the majority is that advertising the model itself is not a model use when construing the first part of the paragraph, but it is not "any other use" when that term is construed.

It must be remembered that the collector in passing upon the admissibility of a model under this paragraph (par. 1620) must consider two things: First, is it to be used exclusively as a model; second, is it incapable of any other use than a model use? If the words "incapable of any other use" were not in the paragraph, he might have no difficulty in performing his duty, in accordance with the majority view, but he will find himself in an embarrassing position in applying both tests to it. In articles like the ones at bar, if held dutiable, he must decide that they are not to be used exclusively as models because they are used for advertising. He must also find that the particular model under consideration is incapable of any other use than a model use, to wit, incapable of an advertising use. The latter finding he can not make because he knows that there is no model, whether it be for construction purposes or Patent Office purposes, but what is *capable* of being used in the exact manner in which this article was used, and which use has controlled its classification. All of this goes

to show that when Congress used the words "incapable of any other use," knowing that articles like those at bar were capable of an advertising use, it did not intend that such an advertising use as is herein shown should be regarded as a use other than a model use.

The majority opinion attempts to answer this contention with the use of the following language:

In our opinion the phrase "incapable of any other use" in the statute alludes to a substantial, practical use for some utilitarian purpose, arising from the structure of the article itself, and not some accidental, occasional, or fugitive use.

Further along it is said that the phrase goes to the function of the article, and by the use of the word "function" an attempt to distinguish the last from the first one is made.

The argument that one term has reference to "function" and the other term has reference to something else, must be accepted as a concession that different meanings are given to the two phrases, notwithstanding the fact that the last phrase refers directly to the first and must mean "any other use" than a use as a model. In my view, the result of the peculiar argument on the difference of the two phrases is to totally ignore the phrase "incapable of any other use," and, indeed, unless you do ignore it, since all models can have a display use, the meaning of the words "to be used exclusively as models," ascribed by the majority, could not be accepted upon any theory.

It may be that Judge GARRETT's view of the case and the view which I entertain, if declared to be the law, might permit models free entry which were not used exclusively for building or Patent Office purposes, but this is the concern of Congress, and in view of the facts before it concerning the *Boas* case, it is reasonable to conclude that it would have employed different language if it sought to accomplish the purposes which the majority decision brings about by judicial construction.

Conditions might not be as bad as are portrayed in the majority opinion in which it is said:

We do not believe it was the intention to permit a manufacturer in some foreign country with a subsidiary American corporation to prepare any desired number of miniature reproductions of goods which it had to sell and distribute them through the United States gratuitously, and evade the payment of duty under the claim that they were models and used exclusively as such. Great abuses will necessarily follow from any such construction of the law which seems to be framed in careful and exact language, with the idea of not permitting any such construction.

The construction which the majority think might lead to abuse would not permit the importation of "miniature reproductions of goods which it had to sell" except such goods as were "models of invention and of other improvements in the arts."

It is my opinion that the words "incapable of any other use" clearly refer to the use of a model for the purpose for which its original was intended or for some other substantially commercial use for which it as a model was not designed. If this model could be used as part of a vehicle on a track or if it could be used as part of a lawn mower, or as part of any other mechanical apparatus, it would not be a model within the paragraph.

I am in entire sympathy with the viewpoint that the legislation would not permit free entry of a so-called model of a steamship which did not purport to call attention to the structure or form of the steamship but was meant to advertise the business of transporting passengers.

The model at bar is shown to be imported to be used as a model exclusively, in my judgment, and it is also incapable of any other use than as a model and is also incapable of the kind of advertising use which Congress sought to get away from in the *Boas* case. It, therefore, meets both requirements of the statute.

I submit that if a model printing press, 6 inches square, imported for use in the Patent Office, was before the collector for classification, he would be required, in determining its classification under the paragraph, and before giving it free entry, to determine that it was incapable of a use like that which is shown to characterize the article at bar. This he could not conscientiously do because it is capable of being made in great numbers and capable of being exhibited in the exact manner as were the drive wheels in controversy.

Under the ruling of the majority, one of the model drive wheels, being used for construction purposes, was entitled to free entry. It would seem that the articles were capable of being segregated. Just what the majority wants done with this model is not disclosed and yet, with all the others, it is declared dutiable. Presumably this attitude is required, since it was capable of "any other use," to wit, an advertising use.

The judgment of the court below on this record should have been *affirmed*.