JAMES S. KEAN v. UNITED STATES (No. 3575)[1]

United States Court of Customs and Patent Appeals, January 23,1933

*James R. Ryan* for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Ralph Folks* and *Reuben Wilson,* special attorneys, of counsel), for the United States.

[Oral argument December 8, 1932, by Mr. Ryan and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

In this appeal the importer, appellant, challenges the correctness of the decision and judgment of the United States Customs Court, First Division, in overruling appellant's protests against the action of the collector in levying certain duties on rugs imported from Canada. The rugs were imported in 1921 and 1922 after the antidumping provision (being a part of the Emergency Tariff Act of 1921) became effective. The entries were made under the Tariff Act of 1913. The merchandise covered by the entries came within the terms of T. D. 39032, which was a finding by the Secretary of the Treasury, under said antidumping act, section 291 (a), of rug dumping from Canada into the United States.

This appeal involves five protests, under each of which were a number of entries, and which are particularly set out under schedule "A" in appellant's petition for review. In this court, appellant abandoned the protests as to entry 92 in protest 365845–G and entry 394 in protest 365887–G.

The appraisements in the several entries involved were made in the early part of the year 1924, and from some of such appraisements, appeals were taken by the importer, which appeals were dismissed for want of samples.

This court in *United States* v. *Tower & Sons,* 14 Ct. Cust. Appls. 421, T. D. 42058, in March, 1927, held appraisements and liquidations of customs officials, upon entries of rugs from Canada, which appraisements and liquidations were made in pursuance of T. D. 39032, *supra,* to be void, since the finding of dumping by the Assistant Secretary of the Treasury delegated to the special agent in charge at New York certain duties which the Secretary should have performed himself.

In 1929 the collector liquidated the entries at bar. He levied certain duties provided for in the rug provision of the tariff act of 1913 and certain additional duties but levied no antidumping duties.

It is claimed by the importer (and the case was argued on that theory here) that the collector liquidated upon a value found in accordance with the requirements of the antidumping act.

The following is the substance of the importer's protests in all the entries:

Protest is hereby made against your liquidation of the following entries:

\*     \*     \*     \*     \*     \*     \*

We claim that duty should have been assessed either on the entered value or on the appraised value, without additional duty, as the appeals to reappraisement were taken under the provisions of the Emergency Act of 1921, in view of the statement made in notices of appraisement "being subject to a dumping duty section 202, E. T."—under T. D. 39032. The finding of the Secretary of the Treasury in T. D. 39032 having been held to be void, the dumping appraisement and reappraisement are likewise void.

The court below questioned whether the protest raised the question of the validity of the appraisement but discussed at length the question of whether the appraisements were invalidated on account of the lack of designation of samples. It held the appraisements and the liquidations thereon valid and overruled the protests, one judge dissenting.

We think the protests are sufficient to raise the question as to the effect upon the validity of the liquidations, which the action of the appraiser in appraising in pursuance of the antidumping act would have thereon. In view of our conclusions herein we do not need to determine whether they are sufficient to raise the question as to the effect of the failure by the collector to designate sufficient samples.

The court below held that there was no appraisement made under the antidumping statute and that—

The addition to the entries indicates conclusively that the merchandise was appraised under paragraph M of section 3 of that act.

The Government in its supplementary brief here merely states that—

It is further to be noted that there is no proof in the record that the value found by the appraiser was not the proper market value as required by paragraph R, and there is no evidence that said value was not the market value regardless of its method of determination.

As pertinent to our discussion we here copy certain provisions of the antidumping act:

SEC. 202. (a) That in the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary has made public a finding as provided in section 201, and as to which the appraiser or person acting as appraiser has made no appraisement report to the collector before such finding has been so made public, if the purchase price or the exporter's sales price is less than the foreign market value (or, in the absence of such value, than the cost of production) *there shall be levied, collected, and paid, in addition to the duties imposed thereon by law, a special dumping duty in an amount equal to such difference.* (Italics ours.)

SEC. 205. That for the purposes of this title the foreign market value of imported merchandise shall be the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is sold

or freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade for home consumption (or, if not so sold or offered for sale for home consumption, then for exportation to countries other than the United States), plus, when not included in such price, the cost of all containers and coverings, and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to the United States, except that in the case of merchandise purchased or agreed to be purchased by the person by whom or for whose account the merchandise is imported, prior to the time of exportation, the foreign market value shall be ascertained as of the date of such purchase or agreement to purchase. In the ascertainment of foreign market value for the purposes of this title no pretended sale or offer for sale, and no sale or offer for sale intended to establish a fictitious market, shall be taken into account.

SEC. 206. That for the purposes of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing, identical or substantially identical merchandise, at a time preceding the date of shipment of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of identical or substantially identical merchandise;

(3) The cost of all containers and coverings, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2)) equal to the profit which is ordinarily added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the same general trade as the manufacturer or producer of the particular merchandise under consideration.

SEC. 209. That in the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary has made public a finding as provided in section 201, and as to which the appraiser or person acting as appraiser has made no appraisement report to the collector before such finding has been so made public, it shall be the duty of each appraiser or person acting as appraiser, by all reasonable ways and means to *ascertain, estimate, and appraise* (any invoice or affidavit thereto or statement of cost of production to the contrary notwithstanding) *and report to the collector the foreign market value or the cost of production, as the case may be, the purchase price, and the exporter's sales price, and any other facts which the Secretary may deem necessary for the purposes of this title.* (Italics ours.)

So far as we can determine from the papers in the case and the record before us, unaided by the briefs of the parties, the value upon which the collector liquidated was, at least in part, the particular kind of value provided for in the antidumping act.

We do not think we would be warranted in agreeing to the conclusion reached by the court below, to the effect that there was an appraisement under the provisions of the Tariff Act of 1913. Attached to the entry papers in some of the entries is a notice to the

importer of an advance in value by the appraiser, dated in 1924, in which it is said:

The merchandise entered by you on December 7, 1921, per S. S. Can. Pac. Railway (C. E. #309), has been appraised in accordance with law; *the appraised value exceeds the purchase price by 22.3 per cent, being subject to a dumping duty under sec. 202, E. T.* (Italics ours.)

The following notation then appears:

The merchandise described in said entry is subject to a special dumping duty in an amount equal to the difference between the purchase price and the foreign market value, sec. 202 of the Emergency Tariff of 1921, according to the findings of the Secretary of the Treasury published under T. D. 39032.

The appraiser, in red ink, on some of the invoices, states:

Appraiser adds 22.3% to invoice unit prices to make market value. Plus poles plus Canadian sales tax. Following reappraisements 33416, 33451, 33615, 34256:

Under the word "Appraised" on the "Summary of entered value, examination, and appraisement" sheet, in all other entries, he adds in red ink: "Adv. at invoiced unit price plus $22\frac{3}{10}\%$ plus poles $1.87, plus $1\frac{1}{2}\%$ sales tax." It would seem that the 22.3 per centum was added to some value found by the appraiser, although it is stated in the record that the 22.3 per centum was the difference between the appraised value and the purchase price.

It is the plain intent of the antidumping act to require that the collector, in liquidating entries subject to the provisions of section 202 (a), shall, in addition to the duties imposed by law, levy and collect the special dumping duty in the amount which equals the difference which is above referred to. The difference is not to be added to the *value* but to the *duty*. If the appraiser added the 22.3 per centum, to any value, and the 22.3 per centum was obtained by finding the difference between the purchase price or exporter's sales price and the foreign-market value or cost of production, as required by section 202 (a)·of the dumping act, he, in arriving at such figure, necessarily was required to take into consideration the terms of such foreign value or cost of production as are found in the antidumping act.

The administrative provisions of the Tariff Act of 1913, defining the kind of duty to be levied and the manner of its ascertainment, are set out in paragraph R of said act and are referred to in paragraphs K, L, and M. Paragraph R reads as follows:

R. That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price thereof, at the time of exportation to the United States, in the principal markets of the country from which exported; that such actual market value shall be held to be the price at which such merchandise is freely offered for sale to all purchasers in said markets, in the usual wholesale quantities, and the price which the seller: shipper, or owner would have received, and was willing to receive, for such merchandise when sold in the ordinary course of trade in the usual wholesale

quantities, including the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings, whether holding liquids or solids, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, and if there be used for covering or holding imported merchandise, whether dutiable or free, any unusual article or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied and collected upon such material or article at the rate to which the same would be subjected if separately imported. That the words "value," or "actual market value," or "wholesale price," whenever used in this Act, or in any law relating to the appraisement of imported merchandise, shall be construed to be the actual market value or wholesale price of such, or similar merchandise comparable in value therewith, as defined in this Act.

The cost of production provision of the Tariff Act of 1913 is found in paragraph L and reads:

L. * * * such cost of production to include the cost of materials and of fabrication, and all general expenses to be estimated at not less than 10 per centum, covering each and every outlay of whatsoever nature incident to such production, together with the expense of preparing and putting up such merchandise ready for shipment, and an addition of not less than 8 nor more than 50 per centum upon the total cost as thus ascertained; and in no case shall such merchandise be appraised upon original appraisal or reappraisal at less than the total cost of production as thus ascertained. * * *

We have not been helped by the original or supplemental briefs of the parties in determining the differences in the values provided for in said section 205 and said paragraph R, or the differences in the elements entering into the cost of production as set out in section 206, *supra*, and the quoted part of paragraph L. We do not regard it as important that we suggest all the differences between the provisions which might influence the value found by the appraising officer. It is sufficient to say that in section 205 the price "at which such or similar merchandise is sold * * * for home consumption [etc.]" is to be taken, and in paragraph R the term "for home consumption" is not found. The material differences between the two "cost-of-production" provisions are so obvious as to require no comment here. See *J. H. Cottman & Co.* v. *United States*, 20 C. C. P. A. (Customs) 344, T. D. 46114.

At the time the appraiser made the appraisements under consideration, had the antidumping order been valid, it was his duty to appraise the merchandise in accordance with the provisions of paragraph R, *supra*. It was also his duty, made mandatory by section 209 of the antidumping act, the Treasury decision above referred to, and the customs regulations then in effect, to "ascertain, estimate, and appraise * * * and report to the collector * * *" the foreign market value, as provided for in section 205, *supra* (or cost of production under section 206, *supra*), and to determine the purchase price or the exporter's sales price. In liquidating it was the

duty of the collector to levy the regular duties provided for in the tariff act of 1913 upon the appraised value found under paragraph R, *supra* (or to the cost of production under paragraph L, *supra*) and to add thereto the difference between the antidumping foreign value (or cost of production) and the purchase price or sales price. The ascertained difference should not have been added to any value found but should have been added to the regular duty.

The record here shows that a part of what is claimed to be the dutiable value consists of 22.3 per centum, which is said to be the amount the appraised value exceeds the purchase price. It would seem that the 22.3 per centum must have been ascertained in an attempt to follow the directions provided for in section 205.

We conclude that the appraisements in the entries at bar were made by the appraiser while proceeding on the wrong theory of law. The appraisements were, therefore, void, and the collector's liquidations thereon were equally void, and the protests against such liquidations should have been sustained.

In *United States* v. *Alex. Murphy & Co.*, 16 Ct. Cust. Appls. 461, T. D. 43210, the merchandise was classified under Paragraph 24 of the Tariff Act of 1922 and appraised at its foreign value or some value other than the American selling price. Upon protest it was found that the importation consisted in part of merchandise such as was provided for in paragraph 28 which, when appraised, required the application of the American selling price. We held that the appraisement and liquidation were illegal and void and said:

> Restated, it thus appears that the importation has not been appraised as the law requires * * *.
>
> *       *       *       *       *       *       *
>
> Applying the rule of the before-mentioned cases and other cases therein referred to, it is obvious that in this, a classification case, we can not order a reappraisement, and it is equally clear that it is our duty to hold that the liquidation in the case is void, because based upon an illegal, and, therefore, void appraisement.

In the case at bar, as in the *Murphy* case, the appraisements were void. It follows that the liquidations were void and that the protests made against such liquidations should have been sustained.

The judgment of the United States Customs Court is *modified.* It is *reversed* as to all entries in the protests involved except such entries as have been abandoned in this appeal, and as to the abandoned entries the judgment of the court below is *affirmed* and the cause is *remanded* for further proceedings according to law.