HURST & CO. *v.* UNITED STATES (No. 2274).[1]

1. EVIDENCE, JUDICIAL NOTICE.

Theoretically, the origin of shellac is "common knowledge."

2. CONSTRUCTION, PARAGRAPH 1604, TARIFF ACT OF 1922—SHELLAC.

The provision for shellac in free list paragraph 1604, tariff act of 1922, is not limited or qualified in any way. It must therefore be accepted as including every kind of shellac which is commonly known as such, or is definitely, uniformly, and generally known to the trade throughout this country under that name.

3. SHELLAC, BLEACHED.

Bleached shellac, being in fact shellac, and shown to be known and used commercially and industrially as such and nothing else, should have been classified eo nomine as shellac under free list paragraph 1604, tariff act of 1922, rather than as a nonenumerated article under paragraph 1459.

United States Court of Customs Appeals, February 9, 1924.

APPEAL from Board of United States General Appraisers, Abstract 45843.

[Reversed.]

*Comstock & Washburn* (*George J. Puckhafer* of counsel) for appellants.

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Marcus Higginbotham, jr.,* special attorneys, of counsel), for the United States.

[1] T. D. 40021.

[Oral argument October 18, 1923, by Mr. Puckhafer and Mr. Lawrence.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, and BLAND, Associate Judges; HATFIELD, Associate Judge, participating in the decision by agreement of counsel.

MARTIN, Presiding Judge, delivered the opinion of the court:

The merchandise now in question is bleached shellac which was imported into this country under the tariff act of 1922. The importers claimed free entry for it, primarily under the enumeration of shellac in paragraph 1604 of the free list, and alternatively under the provisions of paragraph 1584 for resins not specially provided for in the act.

The paragraph first cited reads as follows:

(Free list.)
1604. Lac, crude, seed, button, stick, or shell.

The appraiser reported that the merchandise was not entitled to free entry as shellac since it was not the shellac of commerce, but was lac which had been chemically treated in order to bleach it for the purpose of manufacturing transparent or colorless products. He advised that it be assessed with duty as a nonenumerated manufactured article at the rate of 20 per cent ad valorem under paragraph 1459 of the act. The collector assessed duty accordingly.

The following is a copy of the paragraph last cited:

1459. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The importers protested against the assessment, insisting upon their claim for free entry. The protest was submitted to the board upon evidence, and was overruled; from which decision the importers appealed.

Shellac is derived from a resinous substance called lac, which is produced when bark-lice puncture the twigs of certain trees growing in eastern countries. It is much used in the making of varnishes, lacquers, and like materials. The method whereby it is produced is not altogether familiar, although theoretically it is within "common knowledge," hence the following quotations seem to be apposite:

Oxford Dictionary—

Lac. The dark-red resinous incrustation produced on certain trees by the puncture of an insect. * * * It is used in the East as a scarlet dye. The incrusted twigs are called stick-lac; the resin broken off of the twigs and triturated with water to remove the colour is called seed-lac; melted, strained, and formed into irregular thin plates, it is known as shell-lac or SHELLAC.

Encyclopædia Britannica—

Lac. * * * To obtain the largest amount of both resin and dye-stuff it is necessary to gather the twigs with their living inhabitants in or near June and

November. Lac encrusting the twigs as gathered is known in commerce as "stick-lac;" the resin crushed to small fragments and washed in hot water to free it from colouring matter constitutes "seed-lac;" and this, when melted, strained through thick canvas, and spread out into thin layers, is known as "shellac," and is the form in which the resin is usually brought to European markets.

New International Encyclopædia—

Lac. * * * The shellac of commerce varies in appearance, according to the thoroughness with which it was separated from the coloring matter, from a dark red-brown, called *ruby* shellac, to a pale gold, called *blonde shellac*. *White shellac* is shellac which has been bleached with chlorine.

At the trial before the board it was proven by evidence beyond dispute that there are various commercial grades of shellac which are well known throughout the trade in this country, and that to some extent they rank in value according to the completeness with which the coloring matter has been removed from them. The different grades are known in part as T. N., superfine, lemon bleached, garnet bleached, white bleached, and commercial white bleached in hanks. According to the testimony the imported article belongs to the last of these classifications, and is now and for many years last past has been definitely, uniformly, and generally known in the trade and commerce of this country as one of the grades of shellac. During all of that time it has been regularly quoted as a kind of shellac in the trade journals of the oil, paint, drug, and chemical trades, and has been bought and sold in wholesale quantities under that name throughout this country. It is true that the imported article was prepared by means of a bleaching process before its importation into this country, and consequently that it is not the crudest form or indeed the common form of commercial shellac. Nevertheless, after it was bleached it retained the name and uses of shellac, and never acquired a new name or character or a new use. It appears, furthermore, that all kinds of shellac are in some manner cleaned of the dye which inheres in the lac before they become capable of use as shellac, and that the present article is no more than shellac from which all the original dye or coloring matter has been removed by means of the bleaching process.

It will be noted that the provision for shellac in paragraph 1604, supra, contains no term of limitation or qualification of any kind. It must therefore be accepted as including every kind of shellac which is commonly known as such, or is definitely, uniformly and generally known to the trade throughout this country under that name. This is a well-known principle which of course may be controlled in cases by force of the statutory context, but which is directly applicable in this case.

The following quotations serve to illustrate and sustain the foregoing statement:

The use by Congress of the single word "paraffine," without any qualification manifests an intention to cover at least all varieties of the article which were known when the act was passed, and, as liquid paraffine was at that time one of the known forms of paraffine, it comes within the provisions of paragraph 671.—Judge Lacombe in Shoellkopf, Hartford & MacLagan (Ltd.) v. United States (71 Fed. 695).

* * * the rule long established in tariff interpretation is that where a general term is used in the law without qualification it must, in the absence of a contrary commercial custom, be applied in its broadest significance, including every kind and class of merchandise properly referable thereto, either directly or as a species the genus of which is embraced within the particular tariff nomenclature.— Judge De Vries in Schade v. United States (5 Ct. Cust. Appls. 466; T. D. 35002).

In support of this conclusion we cite the following authorities which enunciate two general rules having application hereto; first, that where a dutiable provision names an article without terms of limitation all forms of the article are thereby included unless a contrary legislative intent otherwise appears; and, second, as a general rule the mere cleansing of an article is not regarded as a partial manufacture of it into a new or different article: Salomon case, T. D. 27289, G. A. 6339, cited and approved in United States v. Salomon (1 Ct. Cust. Appls. 246; T. D. 31277); Neuman & Schwiers Co. v. United States (4 id. 64; T. D. 33310); Schade & Co. v. United States (5 id. 465; T. D. 35002); United States v. Maine Central Railway Co. (7 id. 114; T. D. 36427); Hartranft v. Weigmann (121 U. S. 609).—Smillie & Co. v. United States (11 Ct. Cust. Appls. 199; T. D. 38966).

It seems to us, therefore, that the bleached or white shellac in question is simply one of the several kinds of shellac which are known to commerce, and that it is comprehended within the generic name "shellac," as used in paragraph 1604 of the free list. It is true that the decision in Merrill, Dexter & Co. (T. D. 15845; G. A. 2945) is opposed to this view, but that decision was based in part upon a finding of facts in the case, and, furthermore, the general principle above expressed is so well established that it should govern nevertheless. It may be noted also that the statutory provision in question has been amended since the date of that decision, although not clearly with reference to this question. In view of the conclusion above set out it is of course unnecessary for us to refer to the alternative claim advanced by the importers.

The judgment of the board overruling the protest is accordingly reversed, and the case is *remanded*.