The judgment of the United States Customs Court is *affirmed*.

United States *v.* Tampa Box Co. (No. 2934)[1]

---

[1] T. D. 42561.

United States Court of Customs Appeals, January 23, 1928

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell*, special attorney, of counsel), for the United States.
*Whitaker, Himes & Walker* for appellee.

[Oral argument October 12 and 13, 1927, by Mr. Lawrence and Mr. Himes]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

This appeal, which is from the classification side of the United States Customs Court, involves cedar logs imported from Mexico in 1923. There were two importations, entries, protests, and liquidations, but, as the issues are the same, so far as we undertake to decide them, they will be referred to as one.

The collector classified the logs and assessed duty thereon under paragraph 403 of the Tariff Act of 1922, which, so far as applicable, is as follows:

Cedar commercially known as Spanish cedar, * * * in the log, 10 per centum ad valorem.

Importer does not challenge either the classification or the rate of duty.

The record is voluminous. In the arguments here many questions have been discussed, a detailed consideration of all of which is, in the view we take of the case, unnecessary. A majority of the Customs Court sustained the protests, one justice dissenting. It was agreed by counsel and found by both the majority and the dissenting justice that, as to a part of the logs at least, the appraisal of the local appraiser was greater than the entered value. It was likewise agreed and found that no notice was, or has, ever been given to the importer of either the advance in value or the appraisement itself.

The logs were purchased in Mexico under an agreement that only the sound lumber therein should be paid for, that is, that an allowance should be made for rotten, hollow, lice-eaten, and other defective parts thereof. Under the contract the logs were divided into five different classes, depending upon the sizes to which they squared. The prices thereof were, respectively, $40, $50, $60, $70, and $80 per thousand superficial feet. Before importation they were measured

and the number of thousand feet in each of these respective classes ascertained according to the contract. The entry stated the number of thousand feet resulting from such measurement, and, as the entered value, an amount equal to the total purchase price thereof. The entry also referred to an export tax paid on the logs to the Mexican Government. Whether or not this was a part of the entered value is in controversy. The consular invoice attached to the entry shows the number of feet in each class of these logs and the cost thereof at the contract price.

When the logs were unladen from the vessels in which they were imported, they were measured by several customs officers working together under the supervision of an inspector of customs. The quantity of lumber in each of the five classes of logs was found and reported by such officers to be much larger than that stated in the consular invoice, and the aggregate quantity much greater than the entered quantity. This increase resulted from the fact that the customs officers disregarded all defects in the logs (and there were many) and measured them as if they were entirely sound and merchantable, or, at least, dutiable.

The examiner performed his duties, and made his return on the proper customs form, which is attached to the invoice. Therein he checked the entered value as correct, but indicated that the quantity of the importation was greater than that entered. The local appraiser approved the return of the examiner.

Upon the consular invoice appears the notation:

Examiner finds average unit value to be $60.00 per M. sq. ft.

It appears that this $60 was determined or arrived at by adding the respective prices per thousand feet of the different classes of logs and dividing the sum thereof by five. It is claimed by importer that the value of the unit of 1,000 feet of each of the different classes of logs should have been appraised separately.

The collector at liquidation, understanding that the appraiser had appraised the entire importation at the unit value of $60 per thousand feet, multiplied such value by the number representing the aggregate number of thousand feet of all the classes of logs as measured and ascertained by the customs officers, added to the product the export tax, and assessed duty on the resulting amount.

Importer protested, claiming, among other things, that the liquidation was void, because made upon an amount that was in excess of, or was not, the lawful appraised value. The protest also challenged the correctness and legality of the measurements as returned by the customs officers, and also questioned the liquidation in other respects.

When the case was heard before the United States Customs Court the Government moved to dismiss the protest on the ground, in

substance, that the questions claimed to be raised thereby could and should be presented, if at all, by appeal to reappraisement under section 501 of the act. There is nothing in the record to disclose that until the testimony was taken importer knew that there had been an advance in value of part of the logs covered by the entry.

A majority of the court below, while deciding other issues, held that the appraisement was void, sustained the protest, and directed reliquidation upon the invoice value less the export taxes. The dissenting justice was of opinion that the appraisement was legal, but held that the liquidation was void because no notice had been served on the importer of the advance on appraisement.

The contention of the Government that the protest should be dismissed can hardly be sustained. A liquidation, whether valid or not, has in fact been had. To challenge its validity the only thing the importer could do was to file a protest. To dismiss it would apparently leave importer remediless.

We think there was no valid liquidation in this case, because there was no final appraisement of the logs upon the basis of which liquidation could be had.

In *Peabody* v. *United States*, 12 Ct. Cust. Appls. 354, T. D. 40491, a case which does not appear to have been cited by counsel upon either side, the question as to when an appraisement became final under section 501 of the act stood for decision.

It appeared that no notice of an advance of the appraised over the entered value had been given to the importer as required by said section. It was said in the opinion by Hatfield, Judge:

It is true that the actual decision of the appraiser was made when he filed his report with the collector. It was an appraisement in fact, but the statute requires something more than the actual appraisal of the merchandise and the filing of a report thereof with the collector. Notice in writing thereof must be delivered to or mailed to the consignee, or his agent, before such appraisement becomes a legal appraisement. * * *

Until the statute is complied with there is nothing upon which to predicate an assessment of additional duties, no decision from which the importer need appeal, and consequently he is in need of no relief for which to petition the Board of General Appraisers.

Of course there can be no valid liquidation until there is a final appraisement, and, applying the rule of the *Peabody* case, we must conclude that there has been no valid liquidation in the case at bar.

But it is contended by importer, and was held by the majority of the court below, that, nevertheless, the question of appraisement, as well as all the other issues in this case, were cognizable by the Customs Court upon the trial of this protest.

It will be noticed, as already stated, that importer does not challenge the classification or the rate of duty.

We are of opinion that, before this court, or the court below, can dispose of certain issues presented here, there must be a final appraisement, which can be made only by the appraisement tribunals established by the statute.

Prior to the enactment of section 501 there were, so far as we are advised, no statutory provisions under which an importer had a right to appear before a single general appraiser, or board of three general appraisers sitting in appraisement, and there litigate the question of the value of his importation, until the enactment of Paragraph M of Section III of the tariff act of 1913. That statute did not provide for any appeal from the appraisal of a board of general appraisers, but declared such appraisal should be conclusive against all parties and should not be "subject to review in any manner for any cause in any tribunal or court."

Under earlier statutes in force the Supreme Court in *United States* v. *Passavant*, 169 U. S. 16, and in other cases therein referred to, held that an appraisement declared by statute to be final, or from or against which no appeal or protest had been provided for, was, nevertheless, subject to be impeached in classification cases where the appraiser had proceeded on a wrong principle contrary to law, or had transcended the powers conferred by statute.

This court has long followed the rule of that case. See *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T. D. 31007; *Stahel & Co.* v. *United States*, 11 Ct. Cust. Appls. 430, T. D. 39435, and cases therein cited.

In section 501, however, the law touching appraisements is radically changed, and it is provided that appeals to reappraisement may be had to the general appraiser, then to a board of three, as in former statutes, and in addition that appeals from such board, which is now the United States Customs Court, may be taken to this court on questions of law only.

The effect of these changes in the law was quite fully considered by us in *United States* v. *McConnaughey & Co.*, 13 Ct. Cust. Appls. 112, T. D. 40944, and *Johnson* v. *United States*, Id. 373, T. D. 41318. In those cases it was held, in effect, that the proceedings before a general appraiser, and Board of General Appraisers sitting in appraisement cases, were judicial.

The logic of the opinions in those cases and the language of section 501 require the conclusion that by this change in the law Congress intended that all questions as to the validity of appraisements should be determined in such judicial proceedings. This would make unnecessary their determination or review in the trial of protests against the collector's liquidation, which are addressed to the classification side of the Customs Court. In other words, any question properly arising as to the appraisal of importations, upon which

appraisal the collector may lawfully liquidate, are to be settled by appraisement tribunals and before liquidation. This must have been the congressional intent, because Congress could hardly have contemplated in the last enactment leaving open two methods of determining questions involved in the appraisement of imported merchandise. As was aptly remarked by the dissenting justice, if this were not so—

it would not seem to be incumbent upon any importer dissatisfied with the findings of a United States appraiser to appeal to reappraisement.

Our conclusion is that in the case at bar importer may not raise issues that properly appertain to the appraisement of these logs.

The law contemplates that merchandise subject to ad valorem rates of duty shall be assessed upon the final appraised value thereof, unless the entered value is greater. The Government and the importer are entitled to have such appraised value ascertained in the manner provided by law. A liquidation on the invoice value, as directed by the court below, is not upon the final appraised value. Importer is entitled to the statutory notice of the appraisement, and to exercise the right of appeal to reappraisement.

The Government, in its argument here, agrees that such notice may be given, and we infer, from the attitude of the Assistant Attorney General arguing the case, that such notice will be given.

There is one question argued upon which it may be helpful to express our views, although not strictly necessary to the decision. It is urged by the Government that every issue raised by the protest here can be determined in the appraisement proceedings. We doubt this, especially as to the ascertainment of the quantity of dutiable lumber in this importation. It is not the function of appraising officers to finally determine such quantity. When such officers have ascertained and appraised the unit value of an importation their duty in that respect would seem to be ended. See *United States* v. *Bush*, 5 Ct. Cust. Appls. 127, T. D. 34187.

On the whole record we hold that the liquidation of these entries by the collector was void, because there was no final appraisement, and to that extent the judgment below is affirmed. The judgment is reversed in so far as it directs reliquidation upon the invoice values, and the cause remanded for further proceedings in accordance with the views herein expressed.