UNITED STATES *v.* R. R. ROGERS CHEMICAL CO. (No. 3309)[1]

United States Court of Customs and Patent Appeals, April 29, 1930

*Charles D. Lawrence*, Assistant Attorney General (*James R. Ryan*, special attorney, of counsel), for the United States.
*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellee.

[Oral argument April 14, 1930, by Mr. Ryan]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported on February 3, 1927, at the port of Seattle, Wash., certain goods invoiced and entered as five casks of naphthalene balls. These were claimed by the importer to be free of duty under paragraph 1549 of the Tariff Act of 1922, which is, in part, as follows:

PAR. 1549. * * * naphthalene which after the removal of all the water present has a solidifying point less than seventy-nine degrees centigrade, * * *.

The local appraiser appraised the merchandise under paragraph 27 of the same act, as naphthalene, under the following provision of said paragraph:

PAR. 27. * * * naphthalene which after the removal of all water present has a solidifying point of seventy-nine degrees centigrade or above, * * * 40 per centum ad valorem based upon the American selling price * * * of any similar competitive article manufactured or produced in the United States, and 7 cents per pound.

The collector appealed to reappraisement, and on such reappraisement considerable testimony, including various depositions, was offered and heard. As a result of this hearing Justice Sullivan, sitting as an appraising justice, found, in part, as follows:

The remaining witnesses all testified the merchandise of the importer contained merely a trace of this alleged added merchandise. It is stated by the importer in very clear and explicit terms that this merchandise was purchased at a price less than that of what might be called pure naphthalene, if there is such an article, that the invoice states its analysis, and the analysis of Bella Kahn places it within the statement contained on the invoice. Its value is based on the fact that the melting or solidifying point was less than 79° C. This fact is established by the testimony. It has not been overcome by any testimony offered by the Government. In fact, it is a theory advanced by the Government that by reason of this acenaphthene being found as a coloring point, that it has thereby placed it outside of the terms of the statute. I do not so find. The merchandise is naphthalene. Acenaphthene is provided for in the statute. This merchandise is not of that class. I therefore feel that the entered value was the market value of this merchandise on the date of shipment, and I so find.

On appeal for review to the third division of the Customs Court, the appraisement of Justice Sullivan was affirmed, the court saying, in part:

The Government showed by an analysis that after the extraction of the water the solidifying point was found to be 78.53 degrees. It is claimed, however, that there was in the importation a commodity known as acenaphthene which the analyst proceeded to extract. This being extracted it left the commodity with a solidifying point of 79 degrees or over.

We assume that if Congress had intended that all extraneous matter besides the naphthalene should be extracted in applying the test it would have provided for its removal. The record in the case indicates to our mind that the naphthalene as imported was a commercial product and that commercially naphthalene may contain a small amount of impurities. At least there is nothing in the record which leads us to believe that that is not the case. At all events this appears to have been a commercial commodity. Whether the acenaphthene was introduced into the product for the purpose of reducing its solidifying point, in our opinion, is immaterial.

Thereupon the Government appealed, and contends here that the goods in question constituted a mixture of naphthalene and acenaphthene under the following provision of said paragraph 27:

* * * all mixtures, including solutions, consisting in whole or in part of any of the foregoing products, * * * 40 per centum ad valorem based upon the American selling price, * * * and 7 cents per pound.

The argument is made by Government counsel that the testimony heard by the court below, together with the report of the Government chemist, is sufficient to show that the goods constituted a mixture; that as such mixture they were dutiable under the quoted provision of said paragraph 27, and that, therefore, the goods should have been appraised upon the American selling price thereof, as provided in said paragraph 27; that, no such appraisement having been made, the judgment of the Customs Court should be reversed so that a proper appraisement might be made under said paragraph 27. In this respect the claim of Government counsel differs, to some extent, from the position taken in the court below.

Government counsel concedes that this court has held on repeated occasions that if there be any substantial evidence in a reappraisement appeal to this court, in support of the judgment of the court below, such judgment must stand. This, of course, must be understood as referring to a judgment in reappraisement which is based upon evidence, and which does not consist of a pure question of law. It was conceded, in this case, that whether the goods should be considered as naphthalene, which after the removal of all the water present has a solidifying point less than 79° C. and thus comes within the purview of said paragraph 1549, or as a mixture consisting in whole or in part of any of the products mentioned in said paragraph 27 and thus classifiable under said paragraph, is a question the solution of which depends upon the evidence heard by the court below. It is,

however, contended that in this case, where the appraisement, if made under the wrong paragraph, is null and void under the authority of *United States* v. *Tampa Box Co.*, 15 Ct. Cust. Appls. 360, T. D. 42561, this court should consider the testimony heard, and determine upon the weight thereof under which paragraph it should be classified. In other words, the argument is that while in ordinary reappraisements, where there is no question of the character or kind of appraisement, and where a question of values only is considered, the rule of substantial evidence should be invoked, but where the question is as to whether any valid appraisement has in fact been made, another rule should be applied and this court should pass upon the weight of the evidence.

We find ourselves unable to agree with the views of Government counsel in this respect. To follow this suggestion would make of this court a reviewing tribunal on both the law and the facts. The proceedings on review before the third division of the Customs Court resulted in a judicial determination. *United States* v. *McConnaughey & Co.*, 13 Ct. Cust. Appls. 112, T. D. 40944; *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318. In *United States* v. *Tampa Box Co.*, 15 Ct. Cust. Appls. 360, T. D. 42561, speaking of the changes in the reappraisement law brought about by the Tariff Act of 1922, we said, in part:

> The logic of the opinions in those cases and the language of section 501 require the conclusion that by this change in the law Congress intended that all questions as to the validity of appraisements should be determined in such judicial proceedings. This would make unnecessary their determination or review in the trial of protests against the collector's liquidation, which are addressed to the classification side of the Customs Court. In other words, any question properly arising as to the appraisal of importations, upon which appraisal the collector may lawfully liquidate, are to be settled by appraisement tribunals and before liquidation. This must have been the congressional intent, because Congress could hardly have contemplated in the last enactment leaving open two methods of determining questions involved in the appraisement of imported merchandise. As was aptly remarked by the dissenting justice, if this were not so—
>
> it would not seem to be incumbent upon any importer dissatisfied with the findings of a United States appraiser to appeal to reappraisement.
>
> Our conclusion is that in the case at bar importer may not raise issues that properly appertain to the appraisement of these logs.

One of the questions as to the validity of the appraisement made by the local appraiser in this case was whether the imported merchandise was a "mixture," as defined in said paragraph 27, or whether it was "naphthalene," as is provided for in said paragraph 1549. The answer to this query must be found, if at all, in a consideration of the evidence. The court below, after considering the same, found and determined that the merchandise was such naphthalene as is provided for in said paragraph 1549. We believe there is substantial evidence in the record in support of this finding.

R. R. Rogers, a manufacturing chemist and the owner of appellee's company, testified that naphthalene was of various grades, seldom found in a pure state, and sold on the market, generally, as naphthalene whether it contained impurities or not; that naphthalene, such as is sold commercially, always contains acenaphthene. Mr. James T. Hanna, of San Francisco, a dealer in chemicals, drugs, and allied products, testified he had sold naphthalene to the trade in California for 20 years, and that during the whole of that time merchandise similar to that involved here had been bought and sold in the trade, generally, as naphthalene, and that the question of impurities contained therein was never discussed or deemed important by the trade.

This is substantial evidence that the material involved was naphthalene. It is conceded that such material, after the removal of all the water present, would have a solidifying point of less than 79° C.

The court below held that the imported material did not cease to be naphthalene and become a mixture simply because it contained an impurity, acenaphthene, and that it was commercial naphthalene. There are sufficient precedents for such a finding. In *Goldschmidt-Thermit Co.* v. *United States*, 3 Ct. Cust. Appls. 187, T. D. 32467, this court determined the appeal upon a consideration of what percentages of manganese, iron, and carbon constituted the standard ferromanganese of trade. That case was followed in *Smillie & Co.* v. *United States*, 12 Ct. Cust. Appls. 365, T. D. 40520. *Lamont, Corliss & Co.* v. *United States*, 16 Ct. Cust. Appls. 488, T. D. 43224, involved stearic acid. There a number of witnesses were called who testified that, while they had not bought and sold the material in question, the material was not the commercial product known to the trade as stearic acid. Such proof, while not conforming to the rules as to proof of commercial designation, was held sufficient, by this court, to exclude the merchandise from classification as stearic acid.

Even if the testimony in question in the case at bar might be considered only as proof of common meaning of the word "naphthalene," it would be consistent with the common meaning given by the lexicographers, and furnish ample justification for the finding of the court below. The following definitions are found in Webster's New International Dictionary, 1925:

naphthalene. n. *Org. Chem.* A hydrocarbon, $C_{10}H_{18}$, one of the principal constituents of coal tar, forming brilliant white platelike crystals of peculiar odor. It is obtained esp. from the "middle oil" from coal tar, and is used extensively in the manufacture of dyestuffs and explosives, as a defense against moths (as in moth balls), etc. Chemically, it contains a double benzene nucleus, and is the parent substance of a large number of derivatives.

acenaphthene, n. *Chem.* A crystalline hydrocarbon, $C_{12}H_{10}$, found in coal tar. It is a derivative of naphthalene.

50

When the Congress used the word "naphthalene," it had in mind every form of that article. *United States* v. *Salomon*, 1 Ct. Cust. Appls. 246, T. D. 31277; *Schade & Co.* v. *United States*, 5 Ct. Cust. Appls. 465, T. D. 35002; *Hurst* v. *United States*, 12 Ct. Cust. Appls. 81, T. D. 40021; *Smillie* v. *United States*, 11 Ct. Cust. Appls. 199, T. D. 38966. The very fact that it made one kind of naphthalene free and one ·dutiable, according to their solidifying test, demonstrates that the Congress appreciated that many grades of the substance were known in commerce. The test imposed by statute is not what the substance contains, but what its solidifying test is.

We are not here passing upon the classification of the articles imported, that question not being involved.

The judgment of the third division of the Customs Court is *affirmed*.

BLAND, J., concurs in the conclusion.