(C. D. 255)

NEW YORK MATCH CO., INC., ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 29, 1939)

*Lamb & Lerch (John G. Lerch* and *David A. Golden* of counsel) for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*Charles J. Miville*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; CLINE, J., not participating

EVANS, Judge: This is an action against the United States wherein the importers seek to recover certain sums of money claimed to have been illegally collected as customs duties on importations of matches at different dates in the years 1929, 1930, 1933, and 1934. The illegality claimed as forming the basis of the action is that the customs officials failed to comply with the requirements of section 499 of the Tariff Act of 1922 upon those entries made under the provisions of that act, and that he likewise failed to comply with the requirements of section 499 of the Tariff Act of 1930 as to the remaining entries.

The pertinent portion of those sections in each act at the time of these entries is as follows:

SEC. 499.   *   *   *
The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraise-

ment or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation permit a less number of packages to be examined.

The importers claim (1) that the collector has in each instance failed to designate merchandise for examination as required, and (2) that the appraiser failed to make the examination required by the statute above set forth. It is therefore asserted that the appraisements were void and hence would not support the liquidations made. They pray for a reliquidation and a refund of the excess duties collected.

The record consists of the testimony of a single witness, to wit, Mr. William V. Bunting, who has been an examiner of merchandise at the port of New York for many years and for the past 15 years has been an examiner of matches at said port. His testimony is quoted herewith:

Q. * * * Now, Protest 989887–G, you were the examiner of that merchandise?—A. Yes.

Q. How was it designated?—A. Wharf examination.

Q. Wharf examination. Did you examine it on the wharf?—A. I did not.

Q. How did you examine the merchandise covered by that protest?—A. It was the practice for the sampler to bring in a sample of each particular chop or kind of matches, sample consisting of one gross boxes; from those samples we made our examination.

Q. In other words, he took, the sampler took from one case of 50 gross, one gross of each brand covered by that invoice and brought it to you, and on that you passed the invoice; is that correct?—A. Well, it might not have been one gross in 50 gross; it was one gross, because some of the packages were 10 gross and 5 gross. Matches all have certain brand, certain names or brand numbers, and there may be a thousand gross or 2,000 gross of one brand on an invoice. We would get a sample of each particular brand or chop of matches, each particular kind, which the sampler would take from one case covering that particular brand or kind.

Q. So that that is true as to all of these invoices covered by the protests which you examined at my request, isn't it?—A. That was the regular practice, yes, and covers all of the invoices of which I made an examination.

Q. And you compared the docket so as to avoid calling each number, you compared those, and those are the cases marked "Ready" this morning, are they not?—A. Yes, they were all the cases that were on the docket for this morning, the list of which I have with me.

Q. Now, Mr. Bunting, the same facts are true as to each and every one of those protests on the docket, namely, that they were designated wharf examination, and the examination was conducted in the same manner you have enumerated with respect to Protest 989887–G, is that true?—A. That is true.

Q. There were added 3, Mr. Bunting, since you examined the rest of the cases— Protests 991834–G, 991835–G, and 991836–G, in the name of Kreutz & Co. [Witness examined the protests enumerated.]

Q. Have you examined those 3, Mr. Bunting?—A. I have.

Q. Are the facts the same with respect to those 3 as the other that you have examined?—A. The facts are the same.

Q. Namely, that is a wharf examination, so designated, and you examined in the same manner you have stated on the stand?—A. I did.

Q. Now just to be a little more explicit, Mr. Bunting, will you look at the summary sheet in Protest 989887–G, entry number 832517, and state where on that summary sheet the designation occurs?—

Judge EVANS. Is that the pink sheet attached?

Mr. LERCH. That is the pink sheet attached to the invoice, Your Honor.

A. Do you mean the designation by the collector?

By Mr. LERCH:

Q. That is right?—A. On this particular summary sheet there is no designation.

Q. Where would it occur had it been on there?—A. It would be in the upper right-hand corner, or near that, generally just off the middle, toward the right.

Q. Up towards the top?—A. Up toward the top, in the right-hand corner.

Q. And in each and all of these cases were they similar to that or was the word "wharf" up in the right-hand corner on some of them?—A. In the last 3 I examined it was just "whf.", the abbreviation for wharf which is designated by the collector.

Q. Can you state, Mr. Bunting, from your examination of each of the papers in each of these protests that the only designation that you found on the summary sheet in any of them was either as you have read from there, nothing, or "whf."?—A. That is true.

Mr. LERCH. Now, if the court please, I move, without calling all these numbers, that all of them be consolidated with the record made in this particular protest, initial protest.

Mr. MIVILLE. No objection to consolidation.

Judge EVANS. They will be consolidated.

The CLERK. That is 989888 of New York Match Co., down to and including 991836, of Kreutz & Co.

By Mr. LERCH:

Q. Mr. Bunting, in the examinations in all of these cases and over the period of years that you have examined matches did you follow the regulations of the Secretary of the Treasury, 1923, Article 688, and in 1931, Article 772 (g)? [Handing books to the witness opened at the pages indicated. Witness read same.]—A. I did.

Q. In other words, the reason you didn't examine the statutory one in ten was because of the regulations of the Secretary prohibiting that?—A. Prohibiting examination at the Appraiser's Stores.

Mr. LERCH. That is all. Cross-examine.

CROSS-EXAMINATION

By Mr. MIVILLE:

X Q. So in none of these cases did you examine one out of ten packages, is that right?—A. I don't think in any of them one out of ten packages were examined. They consisted generally of many hundreds of packages, and I think it can be said without question that in no case was 10 percent examined.

X Q. And in all of the papers, official papers here that you examined you found no designation requiring an examination of one out of ten packages?—A. None that I ever saw.

Mr. MIVILLE. That is all.

It is now well settled that unless the provisions of section 499, *supra*, have been met by the customs officials in the appraisement of merchandise, such an appraisement is void. The latest decision which summarizes the law and cites the authorities in support of such a statement is found in the case of *United States* v. *Daniel F. Young, Inc.*, Suit 4233, decided October 30, 1939, C. A. D. 73.

Inasmuch as an appraisement is a necessary preliminary step in the determination of whether or not dumping duties shall be assessed in a proper case, it likewise must follow that a void appraisement cannot support the assessment of dumping duties under the Anti-dumping Act of 1921. It was so held in the case of *C. J. Tower & Sons* v. *United States*, 21 C. C. P. A. 417, T. D. 46943.

Since the testimony in the instant case shows that the collector failed to make the statutory designation and, further, that the appraiser failed to examine the requisite number of packages, we hold that the appraisement in each case is void. Inasmuch as the appraisements were void they would not support a valid liquidation. *United States* v. *Tampa Box Co.*, 15 Ct. Cust. Appls. 360, T. D. 42561; *Peabody* v. *United States*, 12 Ct. Cust. Appls. 354, T. D. 40491, and *United States* v. *Gilson*, 20 C. C. P. A. 117, T. D. 45753. Following the ruling of this court in the case of *Canadian Pacific Railway* v. *United States*, T. D. 49023, 71 Treas. Dec. 936, we hold that the collector should reliquidate on the basis of the entered values in each case.

Judgment will be rendered accordingly. It is so ordered.