(C. D. 1867)

D. C. ANDREWS & COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided on rehearing [C. D. 1732] April 2, 1957)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Dorothy C. Bennett*, trial attorney), for the defendant.

Before JOHNSON and DONLON, Judges

JOHNSON, Judge: The merchandise involved in this case consists of 7 cases of washing machine parts, containing 550 pieces, imported from England on or about April 8, 1952, and assessed with duty at 17½ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802. The classification and rate are not in issue, but it is claimed that duty was assessed on an erroneous value of the merchandise; that the collector should have liquidated on the basis of the alleged entered and appraised value of $146; and that, if the ap-

praised value is higher than the entered value, the liquidation is premature and invalid, since no notice of appraisement was issued.

This case is before us on a rehearing. It was originally submitted on the official papers and an agreement of counsel that the red-ink check mark on the importer's worksheet (plaintiff's exhibit 1) was made by the examiner on an advisory appraisement and that no notice of appraisement was issued. On the record then presented, we held that the entered value was the unit value of £51.19.7 per 100 pieces and that the merchandise was appraised as entered. Accordingly, we found that the collector was not required to furnish written notice of appraisement and that there was no error in his liquidation. *D. C. Andrews & Company, Inc.* v. *United States*, 35 Cust. Ct. 129, C. D. 1732.

At the rehearing, plaintiff called Edward Joseph Kirvin, entry clerk in the employ of the plaintiff during 1952, and James Eardley, customs examiner of commercial machines of all types.

Before discussing this testimony, it is pertinent to take cognizance of the contents of the official papers herein.

The consular invoice describes the merchandise as 7 cases containing replacement parts for Hoover washing machines and, under the column headed "INVOICE TOTAL," states: "$150.15 NO CHARGE."

The commercial invoice (plaintiff's exhibit 3) lists 9 different parts and gives the dollar value per 100 of each. At the bottom, it is stated:

> Value for Customs purposes only—$150.15
> "To replace items damaged in transit ex recent consignments".

Another document (defendant's exhibit 2) is a statement by the seller, giving the cost-of-production figures per 100, making a total of £51 19s. 7d. per hundred.

The entry, itself, gives the quantity of the merchandise as 550 pieces and the entered value in dollars as $146. It also contains the following notation:

$$\begin{array}{lr} & \$150.\,15 \\ \text{Ded. MMV} & 4.\,19 \\ \hline & \$145.\,96 \end{array}$$

Attached to this is a worksheet (plaintiff's exhibit 1), stating as follows:

> Importer Enters at C O P [cost of production]
> 550 pcs @ £51–19–7 = £285–17–8
> (per 100)
> @ 2.808125 = $802.80
> Importer Enters at C O P = £51–19–7
> @ 2.808125 = $145. 96
> Invoiced       150. 15
> _____
> Deduct       $   4. 19

A red-ink check mark appears in the column headed "APPRAISED" on the summary sheet, which is stamped "APPROVED APR 16 1952 John H. Flynn Appraiser."

Mr. Kirvin testified that he prepared the entry and the worksheet (plaintiff's exhibit 1). He stated:

I started off entering this merchandise at cost of production figures per hundred pieces, and after I completed my work sheet I looked over the invoice, and saw I was in error in doing that; that the value shown on the invoice was the complete value for the replacement parts for the washing machine. I, therefore, started over again on my work sheet, on the bottom of the same page, and showed this complete value, and neglected to X out or tear off the paper and eliminate my previous work sheet.

He said that he intended to enter the shipment at the total value of the replacement parts, that is, $146 for the 550 pieces. The figures at the top of the worksheet were made up in accordance with the cost-of-production figures furnished by the foreign seller, which gave the cost per 100 pieces (defendant's exhibit 2). The witness explained that, after looking over the commercial invoice thoroughly, he saw that the value shown was for 550 pieces and not a unit value per 100 pieces.

Mr. Eardley testified that he had examined the merchandise involved herein, which consisted of various quantities of various washing machine parts. He put his initials in red ink on plaintiff's exhibit 1 next to the value per 100 pieces, and placed the red-ink check mark on the summary sheet in the column headed "APPRAISED." He said that he assumed that the appraiser accepted his report. After looking over the papers at the trial, including the seller's cost-of-production figures (defendant's exhibit 2), he stated that the price shown in that document reflected the total value of the complete shipment and not the value per hundred pieces of the various items covered by the invoice.

The record now before us establishes that the person who prepared the entry on behalf of the plaintiff intended to enter the entire shipment at a value of $146. The worksheet, standing alone, is confusing, since it contains two sets of irreconcilable figures, but the witness explained that he intended to cross out the first set. The value given on the entry itself is $146, in accordance with the second set of figures. This value reflects the total amount in the cost-of-production statement and the value given for the shipment in both the commercial and consular invoices. The commercial invoice also gives differing prices per hundred for each of the items making up the shipment, indicating that £51.19.7 was not the price per hundred of this merchandise. In our view, a fair interpretation of all the evidence shows that the entered value was $146 for 550 pieces.

It is evident that the examiner advisorily appraised the merchandise at £51.19.7 per 100 pieces. Apparently, he believed that was the

entered value, since he placed a check mark in the column headed "APPRAISED" on the summary sheet, indicating that the merchandise was appraised as entered. The appraiser approved his report.

Since the appraised value was, in fact, different from and higher than the entered value, a notice of appraisement should have been sent to the importer in accordance with section 501 of the Tariff Act of 1930, as amended. As this was not done, the appraisement is incomplete and invalid and the liquidation based thereon is void. *United States* v. *Tampa Box Co.*, 15 Ct. Cust. Appls. 360, T. D. 42561; *United States* v. *James H. Rhodes & Co.*, 40 C. C. P. A. (Customs) 1, C. A. D. 488.

Under the statutory provisions now in effect (28 U. S. C. § 2636 (d)), where, upon the hearing of a protest, the court declares an appraisement to have been invalid, it is directed to remand the matter to a single judge to determine the proper dutiable value in the manner provided by law. Pursuant to these provisions, judgment will issue remanding the instant case to a single judge of the court to determine the proper dutiable value in the manner provided by law. *United States* v. *James H. Rhodes & Co.*, *supra*.