(C. D. 87)

A. JIMENO ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 31, 1939)

*Lane & Wallace* (*Samuel Isenschmid* of counsel) for the plaintiffs.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph F. Donohue*, special attorney, and *Frank X. O'Donnell, Jr.*, junior attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; KEEFE, J., concurring; EVANS, J., dissenting

CLINE, Judge: In these suits against the United States the plaintiffs seek to recover a part of the duty paid on several shipments of honeydew melons imported at the port of New York, the claim being that the collector should have made an allowance in liquidation or reliquidation under the provisions of section 506 of the Tariff Act of 1930 for the melons condemned by the Department of Health.

When the cases were called for trial these three protests were consolidated for hearing and counsel for the plaintiffs offered in evidence all the papers sent to the court by the collector of customs, which papers were admitted without objection. Each entry contains a report by the Department of Health of the city of New York showing that a portion of each shipment was condemned within ten days after landing. Also, there is attached a notice filed with the collector by the importer within five days after such condemnation, notifying the collector of the condemnation and giving the details of the shipments as required by the customs regulations. The papers contain also a report of the customs inspectors showing the date upon which the merchandise was discharged in each case, the amount of goods condemned, and the date of the condemnation. The plaintiffs seem to have complied with the regulations promulgated under the authority of section 506 (2). The statute and the regulations read as follows:

SEC. 506. ALLOWANCE FOR ABANDONMENT AND DAMAGE.

Allowance shall be made in the estimation and liquidation of duties under regulations prescribed by the Secretary of the Treasury in the following cases:

\* \* \* \* \* \* \*

(2) PERISHABLE MERCHANDISE, CONDEMNED.—Where fruit or other perishable merchandise has been condemned at the port of entry, within ten days after landing, by the health officers or other legally constituted authorities, and the consignee, within five days after such condemnation, files with the collector written notice thereof, an invoiced description and the location thereof, and the name of the vessel or vehicle in which imported.

*Art. 807. Notice—Investigation—Allowance.*—(a) Upon the receipt of a notice of condemnation the collector shall stamp thereon the date of receipt thereof in the customhouse, and shall cause an investigation to be made by two customs officers, who shall make a report to the collector in writing as to the identity and quantity of the fruit or perishable articles condemned and whether or not the same were condemned within 10 days after landing.

(b) If it appears from the evidence submitted by the importer and the report of the investigating officers that the merchandise was condemned within 10 days after the landing thereof, and a timely notice was filed, allowance for the articles so condemned may be made in the liquidation of the entry.

The defendant contends that an allowance was made for the damaged merchandise in the appraisement and points out, as an illustration, the appraiser's return on the invoice in entry 821883, covered by protest 843579–G, reading as follows:

Appraised U. S. value 62¢ per crate, 2,413 crates. All allowances made.

The shipment in that entry covered 2,413 crates of honeydew melons, invoiced at 50 cents per crate, the total value being $1,206.50. Entry was made at a total value of $1,207. The entry was subsequently amended, however, making the unit price of the crates of melons 62 cents and the total value $1,496 for the 2,413 crates.

The United States examiner who examined the shipment was called as a witness by the defendant. He testified that the certificate of condemnation indicated that 180 crates of melons from the shipment covered by entry 821883 had been condemned. When asked to explain what was meant by the statement "all allowances made" in the notation of appraisement on the invoice, he said:

It was the practice at the time this return was made to take into account the pack-out or rots taken out of certain cases and put into certain other cases, so as to make sound cases and rotten cases, instead of cases containing some rots, in the calculation of the United States value. In this case there were 2,413 crates imported. They were repacked and rots taken out of some and put into other cases from which the good melons were taken. So that the sound ones, sound cases or the cases that were partly sound were made entirely sound and all the rots put into the 180 cases, and they were condemned by the Board of Health. The 180 cases were not cases as imported, but were made cases by the repacking.

*       *       *       *       *       *       *

Q. Now, Mr. Curley, will you state whether or not the value which you found in this case covers the number of crates as shown on the amended entry?

*       *       *       *       *       *       *

—A. The returns of sales from which the calculation was made cover only the sound crates, the made sound crates. The theory on which the calculation was made was that the sold cases, the 2,233 cases sold were in effect the entire importation of 2,413 cases, because the rots, as I have already explained, were taken out of the cases which were afterwards sold and put into the cases which were not sold, and the good melons taken out of the cases which were not sold and put into

the cases which were sold. So that the theory was that we were appraising the entire number of melons, not necessarily so many cases, but the entire number of melons imported which were contained as sold in the 2,233 cases. Therefore, the value as found for the 2,233 cases sold was distributed over the 2,413 cases imported, and that was the value reported to the Collector. It wasn't finding of a value and a deduction made from that value.

\* \* \* \* \* \* \*

Judge Evans. If the 2,233 melons had arrived here in sound condition, and no more than that, and the market value had been as reported by the sales of these melons there would have been a different value per unit, wouldn't there, than the one you had?

The Witness. Yes.

Judge Evans. So that strictly speaking the value you give there is not the value, not the United States value of melons of that type at the time these were imported?

The Witness. It is the value found by the sale of the instant merchandise.

Judge Evans. Distributed over some melons that didn't come in?

The Witness. No; the melons sold were the sound melons imported.

Judge Evans. Yes.

The Witness. The melons condemned were the unsound melons, repacked into segregated cases for the purpose of having them condemned and getting allowance therefor.

When asked to explain how he arrived at a value of 62 cents per crate, counsel for the plaintiffs objected, which objection was sustained. The appraiser's report in that case, which counsel for the plaintiffs offered in evidence, explains, however, that the appraised value was computed by taking $^{2233}\!/_{2413}$ of the calculated United States value of sound crates of melons.

The witness testified also that the return on the amended entry (No. 821883) shows that an allowance for the damaged melons was made. This testimony is as follows:

Q. His Honor, Judge Evans, asked you whether or not the amended entry noted thereon an allowance for the 180 cases which had been rotten. Now I understood you to answer that the amended entry did so note.—A. The return on the amended entry shows the fact of the allowance.

Q. Precisely your return?—A. Yes.

We have examined the amended entry and find the following notations thereon:

DEC. 10, 1935
LIQUIDATED
1384——35——484.40

The amended entry covers 2,413 crates of honeydew melons, having a total value of $1,496, which were entered at 35 per centum ad valorem, the duty computed being $523.60. A mathematical computation shows that if we find the value by taking 2,233 crates, which the witness said were all sound melons, at 62 cents per crate, the result is $1,384.46. It is therefore apparent that in the liquidation of December 10, 1935, the collector assessed duty only on the 2,233

crates of sound melons. The amended entry contains also the following notation:

Deposit & Orig'l ........................................ 523. 60
Amend ................................................... 484. 40
                                                         _____
Refund ................................................... 39. 20

The word "Cancelled" and the initials "T. M. T." are written through the figures in the above notation. The amended entry contains also the following notation which has been stricken out by lines in red ink and the initials "G. B." inserted:

Reliq. Mar. 2, 1936
1496/35/523.60

On the original entry we find the following notation in red ink:

Note Deposit
Reliq. as entered March 2/1936

Also there appears the following in black ink:

Reliquidate and make no allowance for mdse. condemned by Bd. of Health, such allowance being made in appraisement. 3/2/36. Thos. M. Thurston.

Also, we find the following notation:

Amended duty ........................................... 523. 60
Amount paid ............................................ 422. 45
                                                        _____
Supplemental deposit .................................. 101. 15

A notation by rubber stamp indicates that the additional deposit was collected on September 26, 1935.

From all of these notations we infer that the amended entry was liquidated on December 10, 1935, and an allowance was made for the decayed melons, a duty of $484.40 being assessed whereas the duty computed on the value shown on the amended entry was $523.60, but, on March 2, 1936, the entry was reliquidated and duty amounting to $523.60 was assessed which is the same amount that was estimated by the plaintiff on the amended entry.

While the notations on the amended entry indicate that an allowance was made in the liquidation for the condemned melons, as stated by the witness, the notations on the original entry, as we interpret them, show that no such allowance was made.

It is noted that the reliquidation of March 2, 1936, occurred 81 days after the original liquidation of December 10, 1935. Protest 843579–G, which covers the merchandise in that entry, is directed against the assessment on reliquidation. Section 514 of the Tariff Act of 1930 provides that the collector's decision "shall, upon the expiration of sixty days after the date of liquidation * * * be final and conclusive upon all persons (including the United States and any officer thereof)" unless the importer, etc., files a protest.

As the protests in this case do not allege that the reliquidations were illegal on the ground that the original liquidations were final, we shall not consider that point.

At the close of the testimony the parties agreed that the testimony of Examiner Curley would apply with equal force and effect to each entry covered by the three protests here under consideration, subject to the objections and exceptions noted.

We find from the record that a portion of each shipment here involved was condemned by the Department of Health of the city of New York within ten days after the merchandise was landed and that allowance in liquidation was not made for such condemned fruit under the provisions of section 506 (2) although the regulations of the Secretary of the Treasury promulgated under the authority of that provision were complied with.

The defendant argues in its brief that allowance under the provisions of section 506 should not be made because the appraiser, in ascertaining the United States value of the merchandise, made allowances for the damaged melons in his computation of value. In other words, it is claimed by defendant that the merchandise was appraised at less than the value of sound melons to compensate for the damaged goods and an average unit price was returned for the complete shipments in the condition as imported. The plaintiffs answer this argument by stating that the statute does not prescribe any method of making allowances for damaged fruit other than that prescribed by section 506 and that the collector is bound by the values returned by the appraiser. If he had been of opinion that the appraised values were too low, he should have filed an appeal for reappraisement as provided by the statute.

If the court had jurisdiction in equity, this argument of the defendant might be considered, but it has been held that this court is a court of law and not of equity, citing *Julius C. Wolff (Inc.)* v. *United States*, T. D. 44310; *Harry A. Leibler* v. *United States*, Abstract 20022, 61 Treas. Dec. 1633.

Importers are entitled to recover on technical grounds. In *Bertrose* v. *United States*, 12 Ct. Cust. Appls. 19, T. D. 39893, and in *United States* v. *Straus & Sons et al.*, 5 Ct. Cust. Appls. 147, T. D. 34193, the court held that the collector should refund excess duties taken on reliquidation occurring more than a year after the original liquidation, although the decisions resulted in assessing less duty on the merchandise than was legally due.

The defendant argues further that if the method of appraisement adopted by the appraiser was unlawful, the appraisement is illegal and void and the liquidation is void and that the protests should be dismissed as premature and the collector directed to order a valid appraisement. The plaintiff answers that the protests do not attack

the validity of the appraisement and therefore that issue is not before the court.

We have considered the arguments of defendant as to the validity of the appraisement and are of opinion that we cannot question the appraiser's returns in this proceeding. Section 501 of the Tariff Act of 1930 provides that the decision of the appraiser is "final and conclusive upon all parties unless a written appeal for a reappraisement is filed or mailed to the United States Customs Court." The appraisement can not be attacked when all elements necessary to a valid appraisement of the merchandise were present, citing *United States* v. *Manahan Chemical Co., Inc.*, 24 C. C. P. A. 53, T. D. 48333. In that case the court said:

\* \* \* we adhere to the views expressed in the *Woolworth* case, *supra*, and hold that in all cases where merchandise is subject to appraisement, and all of the elements necessary to a valid appraisement are before the appraiser, his appraisement, if erroneous, should not be held to be null and void \* \* \*.

The defendant cites *United States* v. *Alex. Murphy*, 16 Ct. Cust. Appls. 461, T. D. 43210, *United States* v. *Tower & Sons*, 14 Ct. Cust. Appls. 421, T. D. 42058, and *James S. Kean* v. *United States*, 20 C. C. P. A. 388, T. D. 46186, in support of its claim that the court should hold the liquidations to be void. We have reviewed the decisions cited but are unable to find that they are controlling in this case.

We hold that the values of the melons found by the appraiser are binding on the collector and that allowances in duties should have been made for the decayed melons which were condemned by the Health Department of the city of New York within ten days after landing and notices of such condemnation served on the collector of customs in accordance with the provisions of the customs regulations promulgated under the authority of section 506 (2) of the Tariff Act of 1930. The protests are sustained. Judgment will be entered in favor of the plaintiffs.

CONCURRING OPINION

KEEFE, Judge: It is not disputed here that the plaintiffs have complied with the regulations promulgated under the authority of section 506 (2) which provide that *allowance shall be made in the estimation and liquidation of duties* where fruit or other perishable merchandise has been condemned at the port of entry. Under authority of section 506 (2) the plaintiffs claim that a refund of duties paid upon entry should have been made by the collector upon liquidation of the entries. The collector assessed duty upon the basis of the entered values of 14,949 crates of melons, whereas only 13,382 crates entered the commerce of the country as imported merchandise, 1,567 crates being condemned. The Government contends, however,

that an allowance was made for the decayed melons by the appraiser in appraising the merchandise and as proof thereof cites the record herein of notations upon the appraiser's return. In addition, the United States examiner was called to testify as to his return and to explain what was meant by notations made by him. An examination of the entry papers discloses that in the nine entries involved herein, by way of amendment, the importer added to make market value in five entries and deducted to make market value in four entries. The increases in the invoice value ranged from 2 cents per crate to 43 cents per crate, and the deductions from 3 to 9 cents per crate.

The appraiser passed the entered values as correct, as indicated by a check mark in red ink on the appraiser's summary sheet in the column headed "appraised." Inasmuch as the additions and deductions upon entry to make market value were based upon the total number of crates of melons imported, and as such additions and deductions were approved by the appraiser as the dutiable values of the merchandise, we cannot assume that the appraiser in so approving the entered values made any allowances. Nor can we assume merely because the importer amended his entries to conform to a value that would be approved by the appraiser, the amendments were made by the importer with a view of allowing for the condemned melons. True, the examiner testified that he found the dutiable value of the merchandise, and illustrated his findings by showing how he found the value for 2,413 crates in entry 821883, protest 843579–G, as follows:

Therefore the value as found for the 2,233 cases sold was distributed over the 2,413 cases imported and that was the value reported to the collector. It wasn't finding of a value and a deduction made from that value.

However, his value notations were an approval of the value as entered, as being the proper dutiable values of the merchandise, and, under the statute, section 501, the decision of the appraiser became final and conclusive upon the expiration of sixty days after the dates of his reports, without there having been any appeal taken by the collector relative to the proper dutiable values of the merchandise imported.

The situation that now confronts us is that the importer has shown all the facts necessary to entitle him to the allowance. The Government contends, however, that the allowance was not made in the collector's estimation and liquidation of duties because such allowance had been made by the appraiser. The appraiser admitted that he found a value and that there was no deduction made from the value found by him because of the condemned merchandise. On the other hand, he approved the entered value of the merchandise, and admitted that such value found for the total of melons invoiced was measured by the value of the melons that were not condemned. Therefore it is clear that the appraiser deliberately undervalued the merchandise for

dutiable purposes. When the appraiser finds a value that is less than the dutiable value, his appraisement is not thereby illegal and void, any more than if he found a value higher than the dutiable value. A remedy for the correction of such values is provided by statute, but if not taken advantage of within sixty days by the collector the erroneous value must stand as the dutiable value of the merchandise. Had the Government established before this court the dutiable values of the merchandise and conclusively proved that the importer had actually obtained the relief for which he is now seeking, we would be powerless to grant relief because the values entered became fixed as the proper dutiable values upon the expiration of sixty days after final appraisement.

In the case of *Bush* v. *United States*, Reap. Dec. 4479, the appraiser found an erroneous dutiable value for silver bracelets. At the trial it was stipulated that the foreign value was represented by the unit values less 50 per centum, plus 8 per centum French tax, and that the export value was no higher. The appraiser, however, found that the foreign value was represented by the unit values, plus 8 per centum, as entered. An appeal to reappraisement was taken by the importers. The Government moved to dismiss the appeal for the reason that the merchandise was appraised as entered and the statute did not provide an appeal by the importers. In finding that the importer had no redress, although his contention was admittedly correct, the court stated:

On the state of the record in this case it now appears that the appraisement should have been made at invoice prices less 50 per centum, plus 8 per centum French tax, whereas the merchandise was actually appraised at the invoice values plus 8 per centum tax. If we were to assume that a clerical error was made in preparing the entry in question, as alleged in the appeal, the court would be powerless to give relief for two reasons. First, the court could not entertain a protest to correct an error or mistake in appraisement. *J. E. Bernard & Co.* v. *United States*, T. D. 42525, 52 Treas. Dec. 504, at 506. Second, the court can only give relief from additional duties for proven clerical error under section 489.

The collector is under no obligation to collect duty on the entered value unless the final appraised value is lower than the entered value.

\* \* \* \* \* \* \*

\* \* \* The right of appeal is a statutory right. It follows that if it is not given in the statute it does not exist. Unfortunately for the importer's contention section 501 does not give in broad terms an appeal from every appraisement. What it does do is to state the right of appeal in terms of a statute of limitation. As to the collector, the appraisement is final unless he files a written appeal within sixty days from the date of the appraiser's report, but as to the importer it shall become final thirty days after delivery or mailing of a written notice of appraisement, etc. Having provided for a notice in only two circumstances, neither of which fits this case, it would seem naturally to follow that the law did not contemplate an appeal from reappraisement in such a case as we have before us.

In that case admittedly the appraiser, in appraising at the entered values, found a value that was higher than the proper dutiable value, and unfortunately the importer was obliged to suffer. Here, we have a case where the appraiser has found a value which is less than the proper dutiable value. The collector had his remedy of appeal to reappraisement, but failed to avail himself of it. In a number of cases in which the writer hereof has participated, we were of the opinion that the importer was entitled to the relief demanded but held that we were unable to grant the same because we are a court of law and without equity jurisdiction. As I see it, we cannot change a long line of decisions of that character merely because in this case there might be a suspicion that in the finding of value the appraiser took into consideration in his appraisement that a portion of the merchandise had been condemned as unsalable. Being a court of law, we have no equitable jurisdiction even when the Government should be the recipient thereof.

For the reasons stated, I fully concur with the conclusions reached by my associate, Judge Cline, in holding that the importer is entitled to the relief sought.

### DISSENTING OPINION

Evans, Judge: I regret that I cannot concur in the opinion of my associates in the foregoing case for the reason that it is clear from the papers introduced in evidence that an allowance was made in liquidation for the decayed melons. This appears by the statements on the amended entry and by the sworn testimony of the witness Curley. It is true that the allowance was made in a roundabout manner but the same was approved and adopted on liquidation. Therefore it must be said that the requirements of the statute authorizing an allowance in such cases have been complied with. The regulations (article 807, Customs Regulations of 1931) authorized by section 506 (2) of the Tariff Act of 1930 provide:

(b) If it appears from the evidence submitted by the importer and the report of the investigating officers that the merchandise was condemned within 10 days after the landing thereof, and a timely notice was filed, allowance for the articles so condemned may be made in the liquidation of the entry.

The decision holds that the regulations were complied with. I think that compliance with the regulations has been shown when it is considered that the officers made the investigation, accepted the conclusion of loss of merchandise, and adjusted the valuation so as to make allowance to the importers for a reduction in the amount of duty to be collected. The fact that the importers filed amended entries accepting the valuation placed on the sound merchandise by the appraiser indicates that they were cooperating with the appraiser in making the adjustment. I think that fact appears from the testi-

mony of the examiner and therefore the importers ought to be estopped now from claiming this refund.

The majority opinion recites that the importers are entitled to recover on technical grounds and cites cases in support of this finding. There can be no question but that an importer has a right to recover in any case where the law warrants recovery regardless of any question of hardship or equity, but recovery on technical grounds is quite a different thing from recovery twice for the same thing. As I view it, this is clearly a case of an attempt to procure a rebate where an allowance has already been made to the importer.

Furthermore, I cannot agree with the finding that an "appraisement cannot be attacked when all elements necessary to a valid appraisement of the merchandise were present." My understanding of the effect of the case of *United States* v. *Murphy*, 16 Ct. Cust. Appls. 461, T. D. 43210, and others, is that a liquidation may be attacked on protest because it was based on a void appraisement, thus sustaining the proposition that an appraisement can be attacked.

I think that, having made an allowance for damage in liquidation, the collector has complied with the statute, and that the protests should be overruled.